OPINION OF THE COURT
 

 Ciparick, J.
 

 This is a proceeding under EDPL 207 challenging two separate "determination and findings” statements by respondent condemnor Saratoga County Water Authority. The primary issues on this appeal are whether Public Authorities Law § 1199-eee (5) unconstitutionally divests the judiciary of its power to determine just compensation and whether that section is unconstitutionally vague.
 

 I
 

 The Legislature created respondent condemnor Saratoga County Water Authority in 1990 for the purpose of ensuring an adequate water supply for the future of Saratoga County (Public Authorities Law § 1199-aaa
 
 et seq.,
 
 added by L 1990, ch 678).
 

 In March 1992, respondent issued two notices of public hearing informing the public that it was considering acquiring through condemnation a portion of petitioners’ assets and real property. On April 2, 1992, respondent held a public hearing to determine the need for and location of respondent’s proposed acquisitions.
 

 On June 18, 1992, respondent issued two separate "determination and findings” statements announcing that acquisition of petitioners’ assets and property was required for the maintenance and operation of a water system capable of supplying potable water to the inhabitants of the Town of Malta. Respondent further indicated that acquisition of petitioners’ real property and assets would assist in the creation of a countywide coordinated public water system. Petitioners, a domestic corporation that provides water to approximately 1,350 customers (Saratoga Water Services, Inc.), a corporation with its principal place of business in Saratoga County (Luther Forest Corp.), and two individual property owners (the Mackays), commenced this proceeding in the Appellate Division to challenge respondent’s determinations and findings. The Appellate
 
 *210
 
 Division confirmed the determinations and dismissed the petition. We now affirm.
 

 II
 

 Public utilities present unique and difficult valuation problems deriving from the absence of sales of similar property and from the fact that the taking usually encompasses not only the physical property but also a going business enterprise that cannot be reestablished elsewhere. Various methodologies have proven unsatisfactory. Fair market value, which is calculated by reference to comparable sales between willing buyers and sellers, is inapt, since "there is hardly a market, in the usual sense, for a public utility, particularly the regulated utility”
 
 (Onondaga County Water Auth. v New York Water Serv. Corp.,
 
 285 App Div 655, 662). The replacement or reproduction cost less depreciation method, which has been described as "the cost which will necessarily be incurred by a reasonably prudent and careful [person] using ordinarily careful business methods in reproducing a plant of equal efficiency” (4A Nichols, Eminent Domain § 15.41 [3] [rev 3d ed]), fails to account for intangible valuation factors such as the present and prospective earning power of the utility. The income capitalization method, which seeks to set the value of property based on its expected net yield to the owner, uses as evidence of value "provable past earnings on a periodic basis, growth rate in use fees, projected cost increases, new users projected and governmental restrictions or regulations capping expansion of earnings”
 
 (see,
 
 5 Nichols, Eminent Domain § 19.07 [1] [rev 3d ed]). Although income capitalization has become the preferred approach in valuating income-producing property
 
 (id.),
 
 it too remains subject to criticism, principally because of the speculative nature of the valuation criteria used
 
 (see, Onondaga County Water Auth.,
 
 285 App Div 662,
 
 supra),
 
 and because earned income imperfectly reflects the actual value of a utility whose rates are subject to regulation. Thus, income capitalization constitutes only evidence of value in the absence of comparable sales by which courts might measure fair market value.
 

 Ill
 

 Petitioners contend that Public Authorities Law § 1199-eee (5) impermissibly mandates exclusive use of the income capitalization method in determining compensation in con
 
 *211
 
 demnation situations and that such a legislative command effectively usurps the power to determine just compensation designated to the judiciary by the State Constitution (art I, § 7).
 
 *
 
 We are not so persuaded. In view of petitioners’ facial challenge, we note that "legislation carries a presumption of constitutionality” and that petitioners "bear the burden of demonstrating [unconstitutionality] beyond a reasonable doubt”
 
 (Alliance of Am. Insurers v Chu,
 
 77 NY2d 573, 585). Petitioners fail to satisfy their burden here.
 

 The just compensation which the State Constitution (NY Const, art I, §7 [a]) requires to be paid to the owner of property taken under the power of eminent domain cannot be reduced to inflexible formulas or inexorable rules
 
 (see, Matter of City of New York [Fifth Ave. Coach Lines],
 
 18 NY2d 212, 218 [" 'It does not rest with the public, taking the property through * * * the Legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation’ ”, quoting
 
 Monongahela Nav. Co. v United States,
 
 148 US 312, 327];
 
 see also, Matter of Rochester Urban Renewal Agency [Patchen Post],
 
 45 NY2d 1, 8).
 

 The Court below correctly concluded that the language of Public Authorities Law § 1199-eee (5) implies only a preference for and does not dictate the method of valuation to be employed. This conclusion is evident from the last sentence of section 1199-eee (5): "If any court shall utilize any method of compensation other than the income capitalization method, * * * then the authority may withdraw the condemnation proceeding.”
 

 Petitioners claim that the condemnor’s right to withdraw
 
 *212
 
 the proceeding in the event income capitalization is not used works to give the condemnor, and not Supreme Court, the last word regarding what shall be the method of compensation. Petitioners mischaracterize the intended and operative effect of Public Authorities Law § 1199-eee (5). Apparent from the legislative history of General City Law § 20 (2), the model for the statute under review, is the conclusion that section 1199-eee (5)’s peculiar framework reflects the Legislature’s attempt to protect the property owner’s right to just compensation by allowing Supreme Court to use methods other than income capitalization while simultaneously providing the condemnor with an avenue of escape in case of an unusually high valuation
 
 (see,
 
 Legislative Mem, 1986 McKinney’s Session Laws of NY, at 2997-2998).
 

 Supreme Court retains its appropriate power in this legislative scheme, as it determines in the first instance whether income capitalization is to be utilized. If income capitalization is employed, respondent must take title at the end of the appeals process, unless "the proposed compensation is more than the rate base of the assets taken in condemnation, as utilized by the public service commission in setting rates”. Moreover, even if respondent does withdraw the proceeding, it remains liable for damages for the period from the taking to the abandonment of condemnation, in which case the court’s determination of value would be used to fix compensation for the temporary taking. Clearly, then, valuation, as fixed by Supreme Court, must be implemented, even if for a limited purpose.
 

 Moreover, the legislative history underlying General City Law § 20 (2), the statute from which Public Authorities Law § 1199-eee (5) derives, explains the preference for income capitalization, while also demonstrating that courts remain free to resort to other methodologies where appropriate
 
 (see,
 
 Legislative Mem, 1986 McKinney’s Session Laws of NY, at 2997-2998; Governor’s Mem,
 
 op. cit.,
 
 at 3195).
 

 Thus, we conclude that Supreme Court’s authority to determine the rule of compensation under section 1199-eee (5) remains undisturbed. We point out, also, that section 5-a of the old Condemnation Law, which was similar in effect to section 1199-eee (5), was approved as constitutional in
 
 Onondaga County Water Auth.
 
 (285 App Div 655,
 
 supra).
 
 In sum, the solution chosen by the Legislature, while unusual, is constitutionally tolerable given the unique valuation problems inherent in public utilities takings.
 

 
 *213
 
 Furthermore, although section 1199-eee (5) is clear in this regard, it should be noted that its valuation language would not apply to the property of the nonutility petitioners in this proceeding. Section 1199-eee (5) grants respondent the authority "[t]o acquire * * * by condemnation pursuant to the [EDPL] * * * any real or personal property or any interest therein”. Section 1199-eee (5) abrogates the EDPL to the extent of providing for use of the "income capitalization method of valuation based on the actual net income as allowed by the
 
 public service commission”
 
 (emphasis added). This language abrogating the EDPL valuation provisions affects public utilities only. EDPL article 5, which sets forth the statutory procedures for determining just compensation, continues to govern valuation of property not subject to regulation by the Public Service Commission. Thus, because compensation for condemnation of the nonutility petitioners’ property is governed by the provisions of the EDPL, rather than section 1199-eee (5), the challenged statute in no way infringes on their constitutional right to receive just compensation.
 

 IV
 

 We also reject as unpersuasive petitioners’ contention that Public Authorities Law § 1199-eee (5) is unconstitutionally vague because it requires courts to value property as of some indeterminable future date. Ordinarily, compensation is fixed as of the instant the condemnee’s property is taken by the vesting of title in the condemnor
 
 (see, Matter of City of New York [Salvation Army],
 
 43 NY2d 512, 518). The challenged statute, however, provides that title shall vest and compensation shall be paid
 
 after
 
 valuation of the property by Supreme Court. Petitioners argue that this renders the statute void for vagueness because Supreme Court must fix compensation as of the date title vests, yet title does not vest under the statute until the appeals process is exhausted, so that Supreme Court is placed in the impossible position of presently fixing the value of property as of some undetermined future date. We need not accept this reading of section 1199-eee (5).
 

 Implicit in petitioners’ position is the premise that no taking occurs under the statute until title vests. However, the challenged statute abrogates this general rule to the extent of chronologically separating the "taking” or "acquisition” event from the vesting of title. Pursuant to EDPL article 4, respondent takes possession of the property at the end of the
 
 *214
 
 acquisition proceeding upon the filing of an acquisition map. Valuation takes place as of that date. Title vests later under section 1199-eee (5), when the appeals process is exhausted, in order that the condemnor may be able to withdraw the proceeding in the event Supreme Court determines income capitalization should not be used, and in order to comply with the settled rule that a condemnor cannot abandon an appropriation after title vests
 
 (see,
 
 6 Nichols, Eminent Domain § 26.42 [2] [rev 3d ed]). In light of our conclusion that valuation takes place as of the time of the taking, we are satisfied that the statute is not unconstitutionally vague.
 

 Petitioners also argue that the proposed acquisition includes property beyond respondent’s statutory authority to condemn. The Appellate Division properly rejected this contention as specious. Section 1199-eee (5) plainly provides respondent with the authority "[t]o acquire * * * by condemnation pursuant to the [EDPL] * * *
 
 any
 
 real or personal property or
 
 any
 
 interest therein, * * * as [respondent] may deem necessary, * * * to carry out the purpose of this title” (emphasis added).
 

 We have considered petitioners’ remaining contentions and conclude that they were properly resolved by the Court below.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa and Smith concur; Judges Titone and Levine taking no part.
 

 Judgment affirmed, with costs.
 

 *
 

 Public Authorities Law § 1199-eee (5) provides in part: "[I]n any proceeding brought by the authority to condemn real property * * * title shall vest in the authority and compensation shall be paid only upon (a) a decision by the supreme court that compensation for the real property condemned shall be determined solely by the income capitalization method of valuation based on the actual net income as allowed by the public service commission, and (b) such supreme court’s determination that the amount of such compensation shall be based on the income capitalization method, entry of a final judgment, the filing of the final decree and the conclusion of any appeal or the expiration of the time to file an appeal related to the condemnation proceeding. If any court shall utilize any method of compensation other than the income capitalization method, or if the proposed compensation is more than the rate base of the assets taken in condemnation, as utilized by the public service commission in setting rates and as certified by such commission, then the authority may withdraw the condemnation proceeding without prejudice or costs to any party.”