100 N.Y.2d 412 (2003)
797 N.E.2d 28
765 N.Y.S.2d 1
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
PAUL STUART, Appellant.
Court of Appeals of the State of New York.
Argued June 5, 2003.
Decided July 2, 2003.
*413 Legal Aid Society Criminal Appeals Bureau, New York City (Natalie Rea, Kathryn Wadia and Andrew C. Fine of counsel), for appellant.
Robert M. Morgenthau, District Attorney, New York City (Sylvia Wertheimer and Susan Gliner of counsel), for respondent.
Hilary Sunghee Seo, New York City, and Dorchen Leidholdt for Sanctuary for Families' Center for Battered Women's Legal Services and others, amici curiae.
Judges SMITH, GRAFFEO and READ concur with Judge ROSENBLATT; Chief Judge KAYE concurs in result in a separate opinion in which Judge CIPARICK concurs.

*414 OPINION OF THE COURT
ROSENBLATT, J.
In 1999, the Legislature criminalized "stalking." The crime contemplates an intentional course of conduct with no legitimate purpose in which the offender targets a particular person. The conduct must be likely to place the victim in reasonable fear of material harm, or cause the victim mental or emotional harm (see Penal Law § 120.45).[1] In seeking reversal of his conviction, defendant contends that the anti-stalking statute is unconstitutionally vague both on its face and as applied to him. We disagree and therefore affirm the order of the Appellate Term upholding the conviction.

I. Facts
Although defendant had not previously known his victim, a 22-year-old student, he approached her outside a card store and presented her with a bouquet of flowers on Valentine's Day 2000. Complainant refused the gift, but defendant insisted she take it, introduced himself as "Paul," and shook her hand. Ultimately she took the flowers and walked away.
Later that month, defendant stood "shoulder-to-shoulder" next to complainant at a local coffee shop. He asked her to sit down and have a cup of coffee with him. After she declined, defendant asked her to dinner. She refused, telling him that her boyfriend would not appreciate his advances. Undeterred, defendant presented her with a heart-shaped box of chocolates and a portrait of her that he had drawn. On the portrait defendant had inscribed complainant's first name. Disquieted by this unwanted attention, complainant "made it clear" to defendant that she did not want any further contact with him. After he insisted that complainant accept the gifts, she took them and left the coffee shop to go to a library.
*415 Defendant followed her, twice ducking behind trees when complainant looked over her shoulder. When she got to the library, she described defendant to a security guard. A friend then accompanied complainant to the police precinct, where she turned in a written report of the incident. Worried, she spent the night at the friend's house.
A few days later, complainant went to an athletic club on the second floor of a building near her home. From the street below, passersby could see the club's patrons. Defendant positioned himself where he could see complainant and stare at her while she was working out. Increasingly frightened, she called a friend to meet her at the club and accompany her as she left. Once on the street, they saw defendant handing out flyers. Complainant and her friend then went to a bank to withdraw money. Defendant followed and watched them wait in line at the ATM.
The next day, defendant trailed complainant twice. During a break in her classes, he followed her to a delicatessen where she bought lunch. That evening, he followed her home. Rather than go to her dormitory room, complainant took refuge in a delicatessen on the ground floor of her building, where she telephoned her father and stayed for 40 minutes, afraid to leave. During that entire time, defendant paced outside, staring at her through the windows. When complainant left the deli, defendant was still in the area and began walking toward her.
The following day, defendant watched complainant and her friend have lunch and tracked the pair while they shopped, coming within five feet of them. Whenever they looked back at him, defendant would try to hide behind walls or trees. The two friends then walked to the police precinct. Defendant suspended his pursuit only when the two women approached the station house, where complainant filed another report.
For almost every day over the ensuing five weeks, defendant followed complainant to various locations, including her dormitory, school and gymnasium, and to stores and restaurants in the neighborhood. When she caught sight of him, defendant would often duck behind a corner and peek out to leer at her. She was frequently accompanied by her friend, who saw defendant following complainant two to three times a week.
Fearful and distraught, complainant again contacted the police and altered her daily patterns, trying to shake defendant off. His intrusive behavior only intensified, and on April 5, *416 2000, for the first time, he trailed her outside her neighborhood. On that day, complainant went shopping in uptown Manhattan. When taking the subway home, she saw defendant enter her subway car. Defendant did not approach her, but stood several feet away, staring and smirking. Afraid to go home, complainant again spent the night at her friend's house. The following day, she went to the police and filed another report.
The day after that, she saw defendant tracking her once more. For a fifth time, complainant went to the police station, where she broke down in tears. Police arrested defendant the next day and charged him with one count of third-degree stalking (Penal Law § 120.50 [3]), two counts of fourth-degree stalking (Penal Law § 120.45 [1], [2]) and one count of first-degree harassment (Penal Law § 240.25).
Before trial, defendant moved to dismiss the fourth-degree stalking charges, claiming that Penal Law § 120.45 is unconstitutionally vague both on its face and as applied to him. He argued that the statute fails to provide adequate notice of what conduct it prohibits and does not give sufficient guidance to those charged with enforcing it. The trial court rejected defendant's arguments, concluding that, as applied to him, the statute satisfied the requirements of due process. Defendant waived his right to a jury trial and the court found him guilty of both counts of fourth-degree stalking.[2]
On appeal to the Appellate Term, defendant again argued that Penal Law § 120.45 is unconstitutional on its face and as applied to him. The court affirmed the conviction, holding that the challenged provisions "provide sufficient notice of the conduct proscribed and are written in a manner that does not encourage arbitrary or discriminatory enforcement" (191 Misc 2d 541, 543 [2002]). A Judge of this Court granted defendant leave to appeal, and we now affirm.

II. New York's Anti-Stalking Statute
In 1992, the Legislature amended the menacing and harassment statutes in its first effort to penalize stalking-type behavior (see L 1992, ch 345; see also Governor's Mem approving L 1992, ch 345, 1992 McKinney's Session Laws of NY, at 2886). Concluding that these amendments were not up to the task and that "stalking behavior * * * ha[d] become more prevalent * * * in recent years," the Legislature in 1999 enacted *417 the "Clinic Access and Anti-Stalking Act of 1999" (L 1999, ch 635, § 2), creating a new, separate crime known as stalking. The lawmakers were moved by the "unfortunate reality [] that stalking victims have been intolerably forced to live in fear of their stalkers" and that "[s]talkers who repeatedly follow, phone, write, confront, threaten or otherwise unacceptably intrude upon their victims, often inflict immeasurable emotional and physical harm upon them" (id.). Accordingly, like the other 49 states and the District of Columbia before it,[3] New York enacted an anti-stalking law to give greater protections to stalking victims and "provide clear recognition of the dangerousness of stalking" (id.; see also NY Assembly Mem in Support of L 1999, ch 635, 1999 McKinney's Session Laws of NY, at 2012).
The Act, codified at Penal Law § 120.45, provides in relevant part:
"A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:
"1. is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person's immediate family or a third party with whom such person is acquainted; or
"2. causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person's immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct."
On this appeal, defendant contends that Penal Law § 120.45 is unconstitutionally vague both on its face and as applied to him. As he did in the courts below, he argues that the statute neither gives people adequate notice of what conduct it *418 proscribes nor provides adequate guidance to those charged with enforcing it.[4]

III. The Vagueness Doctrine

A. Evolution and General Principles
It is axiomatic that a proscriptive law must provide people with reasonable notice of the conduct it prohibits. Defendant's challenge goes to the core of this precept. While he properly couches his argument in due process terms, courts had recognized the concept long before it took on constitutional status under the Fifth and Fourteenth Amendments.
The point was made in this country's jurisprudential infancy, when almost two centuries ago a court explained that, as a rule of statutory construction, indefiniteness is a ground for *419 nullification of penal laws. The court said: "It should be a principle of every criminal code, and certainly belongs to ours, that no person be adjudged guilty of an offence unless it be created and promulgated in terms which leave no reasonable doubt of their meaning" (The Enterprise, 1 Paine 32, 8 F Cas 732, 734 [1810]). The Supreme Court repeated the theme in United States v Brewer (139 US 278, 288 [1891]), still with no mention of the Constitution. Instead, these early decisions relied mostly on the familiar rule of construction that penal laws should be construed strictly, in the accused's favor (see Note, Indefinite Criteria of Definiteness in Statutes, 45 Harv L Rev 160, 160 n 2 [1931] [hereinafter Note, Indefinite Criteria]).
Courts soon came to believe that prosecution under a nullified or "void" statute amounts to a constitutional violation (see International Harvester Co. v Kentucky, 234 US 216 [1914]; see generally Note, Indefinite Criteria, 45 Harv L Rev at 160 n 3). Eventually, the Supreme Court characterized vagueness as a due process infirmity, holding that a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" (see Connally v General Constr. Co., 269 US 385, 391 [1926]).
Our own decisional law took a similar path. We spoke early of the need for clear statutory warnings to alert people as to prohibited conduct (see People v Phyfe, 136 NY 554, 558-559 [1893]; see also People v Taylor, 192 NY 398, 400 [1908]). By 1932, we equated vagueness with unconstitutionality (see People v Grogan, 260 NY 138, 145-149 [1932]) and in 1973 struck down a vague loitering statute on due process grounds (see People v Berck, 32 NY2d 567 [1973]).[5] We did so again nine years later when dealing with a noise control ordinance (see People v New York Trap Rock Corp., 57 NY2d 371 [1982]), and most recently, when upholding a challenge to another loitering statute (see People v Bright, 71 NY2d 376 [1988]).[6]
*420 In addressing vagueness challenges, courts have developed a two-part test.[7] The first essentially restates the classical notice doctrine: To ensure that no person is punished for conduct not reasonably understood to be prohibited, the court must determine whether the statute in question is "sufficiently definite `to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute'" (People v Nelson, 69 NY2d 302, 307 [1987]; see also People v Foley, 94 NY2d 668, 681 [2000]; Grayned v City of Rockford, 408 US 104, 108 [1972]; Papachristou v City of Jacksonville, 405 US 156, 162 [1972]).
Second, the court must determine whether the enactment provides officials with clear standards for enforcement (see Nelson, 69 NY2d at 307; Kolender v Lawson, 461 US 352, 357 [1983]; Grayned, 408 US at 109). This requirement is closely related to the first. If a statute is so vague that a potential offender *421 cannot tell what conduct is against the law, neither can a police officer. A vague statute impermissibly delegates basic policy determinations to the police (and eventually to judges and juries) "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (Grayned, 408 US at 108-109; see also Nelson, 69 NY2d at 307). Put differently, if a criminal statute is impermissibly vague, the police will be guided not by clear language but by whim. The use of precise language will ensure that both requirements are met.

B. Facial vs. As-Applied Challenges
A defendant may challenge a statute as being unconstitutionally vague on its face or as applied. Here, defendant has done both. As the term implies, an as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case (see People v Parker, 41 NY2d 21, 24 [1976]; Chapman v United States, 500 US 453, 467 [1991]; Fallon, As-Applied and Facial Challenges and Third Party Standing, 113 Harv L Rev 1321, 1321 [2000]). By contrast, a facial challenge requires the court to examine the words of the statute on a cold page and without reference to the defendant's conduct. In pursuing a facial challenge, the defendant must carry the "heavy burden" (Matter of Wood v Irving, 85 NY2d 238, 244-245 [1995]; Bright, 71 NY2d at 382) of showing that the statute is impermissibly vague in all of its applications (see United States v Salerno, 481 US 739, 745 [1987]; Village of Hoffman Estates v Flipside, Hoffman Estates, Inc., 455 US 489, 494-495, 497 [1982]; see also Wood, 85 NY2d at 250 [Levine, J., dissenting]; McGowan v Burstein, 71 NY2d 729, 733 [1988]). A successful facial challenge means that the law is "`invalid in totoand therefore incapable of any valid application'" (Hoffman Estates, 455 US at 495, n 5, quoting Steffel v Thompson, 415 US 452, 474 [1974]; see Tribe, American Constitutional Law § 12-32, at 1036 [2d ed 1988]). That would be true, for example, when vagueness permeates a statute to the point where "no standard of conduct is specified at all" (Coates v City of Cincinnati, 402 US 611, 614 [1971]; see also New York Trap Rock Corp., 57 NY2d at 380-381; Parker v Levy, 417 US 733, 755 [1974]) or where the vagueness in the statute is so great that it permits officers to exercise unfettered discretion in every single case (see Bright, 71 NY2d at 383-384). In the latter situation, the potential for arbitrary enforcement in every case would mean that the statute is invalid in *422 all its applications, particularly because the second requirement (adequate guidelines for law enforcement) is perhaps "the more important aspect of [the] vagueness doctrine" (Kolender v Lawson, 461 US at 358).[8]
Because facial challenges to statutes are generally disfavored (see e.g. National Endowment for the Arts, 524 US at 580) and legislative enactments carry a strong presumption of constitutionality (see Brady v State of New York, 80 NY2d 596, 602 [1992]; Bright, 71 NY2d at 382), a court's task when presented with both a facial and as-applied argument is first to decide whether the assailed statute is impermissibly vague as applied to the defendant (see Ulster Home Care v Vacco, 96 NY2d 505, 510 [2001]; Nelson, 69 NY2d at 308; Hoffman Estates, 455 US at 495; United States v Mazurie, 419 US 544, 550 [1975]). If it is not and the statute provides the defendant with adequate notice and the police with clear criteria, that is the end of the matter. "[T]he court will not strain to imagine marginal situations in which the application of the statute is not so clear" (Nelson, 69 NY2d at 308; People v Shack, 86 NY2d 529, 538 [1995]).
It follows, therefore, that if a defendant makes an as-applied vagueness challenge and the court repudiates it, the facial validity of the statute is confirmed (see Hoffman Estates, 455 US at 505). That is so because, in rejecting the as-applied challenge, the court will have necessarily concluded that there is at *423 least one personthe defendantto whom the statute may be applied constitutionally (see id. ["We hold only that * * * legislation is not facially * * * vague if it * * * is reasonably clear in its application to the complainant"]). It would thus be impossible for a defendant to establish the statute's unconstitutionality in all of its applications.[9]
Although we have not said it in so many words, our most recent vagueness cases are fully consistent with these principles. In Nelson (69 NY2d 302 [1987]), we upheld a jostling statute as applied to the defendant (see id. at 308). By concluding that there was at least one person as to whom the statute could be applied constitutionally, we implicitly determined that it was valid on its face. In Bright (71 NY2d 376 [1988]), we undertook a facial analysis of a loitering statute and struck it down because, as in New York Trap Rock Corp., the statute was so vague that it failed to specify any standard of conduct (since it used the words "satisfactory explanation") and placed "complete discretion in the hands of the police" (id. at 378, 384). Owing to these constitutional ailments, the statute in Bright could not be applied constitutionally under any set of circumstances. In Shack (86 NY2d 529 [1995]), we addressed only the defendant's contention that the aggravated harassment statute was vague as applied to him (see id. at 538) and upheld the statute. In so concluding, we adhered to the principle articulated in Hoffman Estates and other cases that when considering vagueness challenges of this type courts should first determine whether the statute can be constitutionally applied to the defendant. If it can, the statute is necessarily valid on its face (see Hoffman Estates, 455 US at 505; see also Wood, 85 NY2d 238 [1995]).
In her concurrence, the Chief Judge argues that the "no valid applications" rule is wrong, and that it is unwise for the Court to employ it (see concurring op at 429-430). While she has thoughtfully discussed the merits of our rule, we regard it as sound andmore to the pointnote that there is nothing the least bit novel or ground-breaking in our applying it. In McGowan v *424 Burstein (71 NY2d 729 [1988]), we considered a facial constitutional challenge to a method of scoring civil service exams (see id. at 732-733 ["Plaintiffs are not challenging zone scoring as applied to any particular civil service examination * * *. Instead, they seek a declaration that zone scoring is per se violative of the State Constitution * * *."]). We applied today's rule by declaring that "[t]o sustain their challenge, as so framed [i.e., as a facial challenge], plaintiffs must demonstrate that zone scoring in any degree and in every conceivable application would be unconstitutional" (id. at 733). We rejected the facial challenge, but only after concluding that the plaintiffs "have not carried this burden" of showing unconstitutionality "in every conceivable application" (id.; see also Wood, 85 NY2d at 250 [Levine, J., dissenting]).[10]

*425 IV. The Constitutionality of New York's Anti-Stalking Law
With these principles in mind, we begin by addressing whether Penal Law § 120.45 is unconstitutionally vague as applied to defendant.[11] The statute contains a preamble followed *426 by three subdivisions.[12] The preamble provides that a person is guilty of stalking in the fourth degree if he or she (1) intentionally and for no legitimate purpose (2) engages in a course of conduct directed at a specific person (3) when he knows or reasonably should know that his conduct will have either of two consequences: first, that it is likely to cause reasonable fear of material harm to the victim's (or other specified third party's) physical health, safety or property (see subd [1]); or second, that the conduct causes material harm to the victim's mental or emotional health and consists of following, telephoning or initiating communication with the victim (or other specified third party) after being clearly told to stop (see subd [2]).
Defendant's principal attack is on the words "no legitimate purpose." He argues that the Legislature's failure to define the term renders the statute unconstitutionally vague. He contends that an ordinary person would not know what the phrase means, and that this uncertainty will result in arbitrary enforcement. Defendant asserts that the vagueness problem is exacerbated because the law does not contain a specific intent requirement.
We note at the outset that the statute does contain a mens rea requirement of intent, in that a person cannot be guilty of stalking by accident, inadvertence or chance encounter. To be convicted, the person must have intended to engage in a course of conduct targeted at a specific individual. Defendant argues that this intent requirement is not enough; he claims that the statute must contain a requirement that the offender intend a specific result, such as fear or harm. We disagree. In People v Nelson (69 NY2d 302 [1987]), this Court upheld a jostling statute as against a vagueness challenge even though the statute did not specifically require larcenous intent. Like the statute before us today, it prohibited "a certain intentional course of conduct regardless of the wrongdoer's underlying purpose or motive" (id. at 307-308 [emphasis added]). We observed that the jostling statute "clearly delineates specific conduct easily avoided by the innocent-minded" and thus "should present no difficulty for a citizen to comprehend that he must refrain from acting with the intent to bring his hand into the proximity of a stranger's pocket or handbag unnecessarily" (id. at 307). Similarly, defendant could not reasonably have failed to realize *427 that his intentional course of conduct directed at the complainant for over a month was unlawful under the anti-stalking statute.
The Legislature's decision to require intent as to a particular course of conductas opposed to a specific resultwas purposeful. In following the lead taken by the drafters of the Model Anti-Stalking Code,[13] the Legislature enacted Penal Law § 120.45 recognizing that many stalkers are mentally or emotionally disturbed and that trying to discern their specific motivations would prove difficult, if not impossible. The statute thus focuses on what the offenders do, not what they mean by it or what they intend as their ultimate goal. In this manner, the law could properly reach those "delusional stalkers who believe either that their victims are in love with them or that they can win their victims' love by pursuing them" (Note, Anti-Stalking Laws: Do They Adequately Protect Stalking Victims?, 21 Harv Women's LJ 229, 254 [1998]). If the Legislature had required that the stalker intend to frighten or harm the victim, the statute would be debilitated and a great many victims endangered. Stalkers would be free to continue as long as they harbored the notion that they stood to win, rather than harm, their prey. We cannot tell how many stalkers intend no harm. The Legislature did not want to give them license.
In considering defendant's conduct, we cannot conclude that the phrases "course of conduct" or "directed at a specific person" are in any way vague. From February 14 to April 8 he unflaggingly trailed complainant, from the sidewalk where he first presented her with a bouquet of flowers, to the subway car 30 city blocks away where he simply "smirked" at her. This deliberate and intentional conduct, repeated day after day, was aimed at one victim. Thus, defendant cannot reasonably contend that this was not a willful "course of conduct" "directed at a specific person" or that this description is in any way vague as to him.
The anti-stalking statute also requires that the offender know or reasonably should know that his conduct is likely to cause reasonable fear of material harm to the victim's physical health, safety or property (see Penal Law § 120.45 [1]). And, in the case of subdivision (2), the statute specifies that the offender must follow, telephone or initiate communication with the victim after being told to stop. These provisions are *428 important because they eliminate the concern that a particular course of conduct will be deemed criminal based merely on the subjective fear or sensibilities of the alleged victim. The fear must be reasonable and not idiosyncratic; the harm (or likely harm) must be material. These are objective terms easily understood. Like the jostling statute in Nelson, the anti-stalking law is "easily followed by most citizens of this State, provides objective criteria * * * [and] is not dependent upon the subjective conclusions of a complainant or an arresting officer" (69 NY2d at 308).
In turning to the words "no legitimate purpose," we note that People v Shack (86 NY2d 529 [1995]) involved a constitutional attack on an almost identical phrase. There, the defendant challenged Penal Law § 240.30 (2), which provides that "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he * * * [m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication" (Shack, 86 NY2d at 533 [emphasis added]). As defendant does here, Shack argued that "the subjective term `legitimate' * * * is incapable of precise definition" (id. at 538). We rejected his claim, holding that common understanding and practices clarified the meaning of the phrase as being "the absence of expression of ideas or thoughts other than threats and/or intimidating or coercive utterances" (id.). We noted that the words "no purpose of legitimate communication" should not be considered in isolation. They are but one element of a statute that fully defines the prohibited act (id. at 539). Considered in light of "the clear and understandable elements of the criminal conduct" (id.), we concluded that the statute gave Shack adequate notice and law enforcement authorities sufficient guidance.
Here, too, we are satisfied that an ordinary understanding of the phrase "no legitimate purpose" means the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten. The common understanding of that phrase and the various other provisions of the anti-stalking statute, when read as a whole, furnished defendant with adequate notice that his unrelenting pursuit of complainant was unlawful, particularly after she told him that she wanted no contact with him.
Besides the "no legitimate purpose" element, the statute contains lucid provisos clearly applicable to defendant's conduct: The course of conduct must be intentional; it must be *429 aimed at a specific person; and the offender must know (or have reason to know) that his conduct will (or likely will) instill reasonable fear of material harm in the victim. In the case of subdivision (2), the offender must have been told to cease his conduct after having followed, telephoned or initiated communication with the victim. Defendant has offered no explanation for having inflicted himself on complainant, nor has he attempted to show that his intrusive behavior involved some valid purpose other than hounding her to the point of harm. This is not legitimate, and defendant has given us no reason to conclude that it could have been anything but illegitimate. Lastly, he has not argued to this Court that complainant was never in fear, reasonable or otherwise, or that she suffered no harm, whether it be material or not.
We therefore conclude that sections 120.45 (1) and (2) of the Penal Law, as applied to defendant's conduct, are not unconstitutionally vague. It follows that, because there exists at least one constitutional application of the statute, it is not invalid on its face (see Hoffman Estates, 455 US at 499, 505).
Accordingly, the order of the Appellate Term should be affirmed.
Chief Judge KAYE (concurring in result).
I join in the Court's rejection of defendant's as-applied vagueness challenge. Additionally, I agree with the Court's rejection of defendant's facial challenge because the language of the statute provides persons of ordinary intelligence with fair notice of what is proscribed and does not permit arbitrary or discriminatory enforcement by the police. That is all that is required to resolve this case, in accordance with a long line of precedents of this Court and others throughout the state that have for decades entertained as-applied and facial challenges to statutes.
What I cannot accept is the rule now imposed thatin a vagueness challengea statute must be found constitutional on its face whenever an as-applied challenge fails. The Court's last sentence says it all: "because there exists at least one constitutional application of the statute, it is not invalid on its face" (majority op at 429). Thus, either a statute will be found constitutional as applied and a facial challenge thereby fails on the merits (as here), or a statute will be found unconstitutional as applied and the Courthaving resolved the controversy before itdoes not need to reach the facial challenge.
The Court's rule is taken from United States v Salerno (481 US 739, 745 [1987]), which opined that, in order to prevail on *430 most facial claims, "the challenger must establish that no set of circumstances exists under which the Act would be valid." This, however, has not previously been our rule for vagueness challenges to criminal statutes,[1] nor should it be. Indeed, it is not even the Supreme Court's rule.[2]
A statute is unconstitutionally vague when either of two separate circumstances exist: (1) the statute fails to provide sufficient notice, such that "a person of ordinary intelligence" "could not reasonably understand [what conduct is lawful and what is] proscribed," or (2) the statute is written in a manner that permits or encourages arbitrary or discriminatory enforcement (People v Bright, 71 NY2d 376, 382 [1988]). The first prong thus presumes that the statute by its terms may cover both innocent and criminal conduct, without fair notice of which conduct is meant to be prohibited. In other words, a vague statute may well cover situations properly criminalized, and would thus be constitutional as applied to those situations. Such a statutealthough not unconstitutional in all its applicationscould nevertheless be vague on its face insofar as its language covered not only such conduct, but also a substantial amount of innocent conduct (see Papachristou v City of Jacksonville, 405 US 156, 163 [1972] [vagrancy statute unconstitutionally vague because it "makes criminal activities which by modern standards are normally innocent"]; cf. Fargo Women's Health Org. v Schafer, 507 US 1013, 1014 [1993] [O'Connor, J., joined by Souter, J., concurring] [facial challenge to abortion waiting-period statute may prevail if law is unconstitutional "in a large fraction of * * * cases"]).
*431 In Bright, after striking down the statute on its face, we then went on to determine that even if it had not been vague on its face, the statute would still have been vague as applied insofar as "transportation facility" was "defined in such a broad, all-encompassing manner so as to include some facilities that are more analogous to the public street than to a specific area of restricted public access that gives notice of its prohibition against loitering" (71 NY2d at 386). Because the two facilities involved in Brightthe Long Island Railroad Station and the Port Authority Bus Terminalwere each more like a "small, indoor city" than merely a station that offered few amenities and served "primarily as a place to purchase a ticket and wait for a train" or a bus, we held the statute unconstitutional as applied (id. at 387, 386). By implication, had the transportation facility in question been a small-town station instead of a multipurpose New York City complex, the statute would not have been vague as applied. And had a defendant from that small town challenged the statute only as applied, that defendant would have lost. But we nevertheless held the statute unconstitutional on its face, although it was not unconstitutional in every conceivable application.
Similarly, in Coates v City of Cincinnati (402 US 611, 612 [1971]), the Supreme Court struck down as vague on its face an ordinance prohibiting persons assembled on a sidewalk from "conduct[ing] themselves in a manner annoying to persons passing by." The Court explained that "[i]t is said that the ordinance is broad enough to encompass many types of conduct clearly within the city's constitutional power to prohibit. And so, indeed, it is. The city is free to prevent people from * * * engaging in countless * * * forms of antisocial conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. * * * It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed" (402 US at 614 [citation omitted]). Again, a defendant whose conduct was "clearly within the city's constitutional power to prohibit" and who challenged the statute only as applied would have lost but yet the statute would still have been unconstitutional on its face.
This makes sense because vagueness is different. Insofar as a statute's language may be read to cover both criminal and innocent conductand thus may in some circumstances be constitutional as applied and in others unconstitutionalit *432 may fail to provide fair notice as to just what conduct is in fact meant to be prohibited, rendering it unconstitutional on its face. It is only in this sensethat no one can define the limits of the situations that a statute is meant to proscribe, even though some may know with certainty that their conduct is included within the vast universe of what is prohibitedthat it may be said that a facially vague statute is vague in all its conceivable applications.
In other words, a facially vague statute fails to give anyone notice of its limits, even though everyone might understand its core, and even though it may not be unconstitutional as applied to this core. A vague statute grants the police "too much discretion in every case," regardless of whether that discretion is applied "wisely or poorly in a particular case * * *. And if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications" (Morales, 527 US at 71 [Breyer, J., concurring] [emphasis in original]). Indeed, the Supreme Court has declared that "the more important aspect of vagueness doctrine `is * * * the requirement that a legislature establish minimal guidelines to govern law enforcement'" (Kolender, 461 US at 358 [citation omitted]).
Insofar as the Court now concludes that defendants may not mount a facial challenge when they should have known that their conduct was meant to be proscribed by the challenged statute, its analysis mistakenly focuses exclusively on the first prong of the vagueness test while ignoring the second. Indeed, a focus on the second, "more important" (Kolender, 461 US at 358), prong makes clear why the Court's rule is hard to sustain. Were vagueness to be defined merely in terms of whether a statute provides fair notice of what is prohibited, it would be easy to conceive of the failure of an as-applied challenge when the conduct of the particular defendant fit "squarely within the `hard core' of the statute's proscriptions" (Broadrick v Oklahoma, 413 US 601, 608 [1973]). But the second prong mandates that a statute not permit or encourage arbitrary or discriminatory enforcement by the police. The test is not whether an officer actually exercised discretion arbitrarily in a given case.
Thus understood, an analysis of the second prong "as applied" to a defendant has no discernible meaning; the very nature of a second-prong analysis is inherently a facial one. Indeed, the Court's so-called "as-applied" analysisfocusing as it does on the language of the statute as commonly understood; properly construing "no legitimate purpose" to mean "the *433 absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten" (majority op at 428); and concluding that the statute is not "in any way vague" (majority op at 427)seems to me to be in truth a facial analysis.
Finally, the Court asserts that, under its rule, facial challenges may nevertheless succeedas in Brightwhen a statute is "so vague that it fail[s] to specify any standard of conduct * * * and place[s] `complete discretion in the hands of the police'" (majority op at 423 [citation omitted]). A statute is vague when a person of ordinary intelligence cannot reasonably understand what conduct is proscribed or when it is written in a manner that permits or encourages arbitrary or discriminatory enforcement. To begin to distinguish among gradations of vagueness so as to determine not merely that a statute fails this constitutional test but rather that it is "so vague" as to be facially invalid creates an unworkable standard.
Thus, in the end the Court's rule is that failure of an as-applied challenge to the constitutionality of a statute on vagueness grounds automatically constitutes failure of a facial challenge as wellunless the Court decides to reach the merits of a facial challenge by already having determined that the challenger should prevail.
Order affirmed.
NOTES
[1] The Penal Law divides the crime of stalking into four degrees, depending on aggravating circumstances. Fourth-degree stalking, of which defendant stands convicted, is a class B misdemeanor (Penal Law § 120.45). Third-degree stalking is a class A misdemeanor (Penal Law § 120.50); second-degree stalking is a class E felony (Penal Law § 120.55); and first-degree stalking is a class D felony (Penal Law § 120.60).
[2] The prosecution dropped the harassment charge and defendant was acquitted of the third-degree stalking charge.
[3] For a list of all the jurisdictions and their anti-stalking statutes, see David, Is Pennsylvania's Stalking Law Constitutional?, 56 U Pitt L Rev 205, 205-206 n 1 (1994).
[4] We note that vagueness challenges to stalking statutes have almost uniformly been rejected by reviewing courts (see State v Randall, 669 So 2d 223 [Ala Ct Crim App 1995]; Petersen v State, 930 P2d 414 [Alaska Ct App 1996] [dictum]; People v Ewing, 76 Cal App 4th 199, 90 Cal Rptr 2d 177 [Ct App 1999] [and cases cited at 76 Cal App 4th at 206 n 2, 90 Cal Rptr 2d at 181 n 2]; People v Baer, 973 P2d 1225 [Colo 1999]; State v Marsala, 44 Conn App 84, 688 A2d 336 [App Ct 1997], cert denied 240 Conn 912, 690 A2d 400 [1997]; United States v Smith, 685 A2d 380 [DC 1996]; Snowden v State, 677 A2d 33 [Del 1996]; Bouters v State, 659 So 2d 235 [Fla 1995]; Johnson v State, 264 Ga 590, 449 SE2d 94 [1994]; People v Bailey, 167 Ill 2d 210, 657 NE2d 953 [1995]; State v Rucker, 267 Kan 816, 987 P2d 1080 [1999] [as amended]; Monhollen v Commonwealth, 947 SW2d 61 [Ky 1997]; Galloway v State, 365 Md 599, 781 A2d 851 [Ct App 2001], cert denied 535 US 990 [2002]; Staley v Jones, 239 F3d 769 [6th Cir 2001] [adjudicating a challenge to Michigan's anti-stalking law]; State v Orsello, 554 NW2d 70 [Minn 1996] [upholding anti-stalking statute by construing it to require a specific intent]; State v Martel, 273 Mont 143, 902 P2d 14 [1995]; State v Porelle, 822 A2d 562 [NH 2003]; State v Cardell, 318 NJ Super 175, 723 A2d 111 [App Div 1999]; State v Duran, 126 NM 60, 966 P2d 768 [Ct App 1998] [reversing the defendant's conviction on other grounds], cert denied 126 NM 533, 972 P2d 352 [1998]; City of Akron v Andrews, 2000 WL 108818, 2000 Ohio App LEXIS 158 [Ohio Ct App, Jan. 26, 2000]; State v Saunders, 886 P2d 496 [Okla Ct Crim App 1994]; Delgado v Souders, 334 Or 122, 46 P3d 729 [2002] [as amended]; Commonwealth v Schierscher, 447 Pa Super 61, 668 A2d 164 [Super Ct 1995]; State v Fonseca, 670 A2d 1237 [RI 1996]; State v McGill, 536 NW2d 89 [SD 1995]; Salt Lake City v Lopez, 935 P2d 1259 [Utah Ct App 1997]; Parker v Commonwealth, 24 Va App 681, 485 SE2d 150 [Ct App 1997], cert denied 523 US 1071 [1998]; State v Lee, 135 Wash 2d 369, 957 P2d 741 [1998]; State v Ruesch, 214 Wis 2d 548, 571 NW2d 898 [Ct App 1997]; Luplow v State, 897 P2d 463 [Wyo 1995]; but see Commonwealth v Kwiatkowski, 418 Mass 543, 637 NE2d 854 [1994] [reversing the defendant's conviction, but construing the statute to resolve any ambiguity in the requirement that the defendant "repeatedly" harass his victim, and directing that the redeemed statute be applied in future cases]; Long v State, 931 SW2d 285 [Tex Ct Crim App 1996]).
[5] Before Berck, this Court had struck down statutes based on vagueness challenges but did not expressly rely on the Due Process Clause (see People v Firth, 3 NY2d 472 [1957] [speeding statute]; People v Diaz, 4 NY2d 469 [1958] [loitering statute]).
[6] In other instances, lower courts have struck down criminal statutes or ordinances on grounds of unconstitutional vagueness (see e.g. Bakery Salvage Corp. v City of Buffalo, 175 AD2d 608, 609 [4th Dept 1991] ["noxious or offensive odor"]; Matter of Carpinelli v City of Kingston, 175 AD2d 509 [3d Dept 1991] [prohibition against more than two commissioners having "the same political opinion on state and national issues"]; Russell v Town of Pittsford, 94 AD2d 410 [4th Dept 1983] ["request to purchase" from a peddler]; Adventures in Cinema v Congdon, 59 AD2d 52, 53-54 [3d Dept 1977] [film presentations "that persons under seventeen years of age would not be permitted to attend"]; People v Iftikhar, 185 Misc 2d 565, 569 [Crim Ct, Queens County 2000] ["any uniform, shield, buttons, wreaths, numbers or other insignia or emblem in any way resembling that worn by members of the police force"]; People v Mazzochetti, 181 Misc 2d 701 [Just Ct, Monroe County 1998] ["fence"]; People v Geel, 180 Misc 2d 272 [Just Ct, Rensselaer County 1999] ["loud or raucous noises likely to annoy or disturb people"]; People v Donato, 179 Misc 2d 192, 193 [New Rochelle City Ct 1998] [pet animals making "unnecessary * * * noise"]; Citizens for a Safer Community v City of Rochester, 164 Misc 2d 822 [Sup Ct, Monroe County 1994] ["air gun"]; People v Peterson, 145 Misc 2d 501 [Dist Ct, Nassau County 1989] [absence of definitions for the terms "commercial vehicle" and "passenger vehicle" in Vehicle and Traffic Law]; People v Fulvio, 136 Misc 2d 334 [Crim Ct, Bronx County 1987] ["surcharge"]; People v Sposito, 126 Misc 2d 185 [Dist Ct, Suffolk County 1984] ["dead storage"]; People v Christian, 96 Misc 2d 1109, 1111 [Crim Ct, Kings County 1978] ["no sidewalk general vendor shall operate within twenty feet of any other vendor"]; People v Buscemi, 89 Misc 2d 174 [Dist Ct, Suffolk County 1977] ["restrain" in statute prohibiting unlawful imprisonment]; People v Heslop, 62 Misc 2d 620 [Tompkins County Ct 1970] [requirement that postal carriers driving private vehicles in delivering mail must affix a sign reading U.S. MAIL to the roof of their vehicle]; Sa-Bleu, Inc. v Village of Port Chester, 42 Misc 2d 360 [Sup Ct, Westchester County 1963] [prohibition against dancing and entertainment in restaurants and taverns after 1:00 A.M.]). We have no occasion to address the correctness of these decisions or their analyses.
[7] The void-for-vagueness doctrine has been considered in civil cases as well as criminal ones (see e.g. Matter of Saratoga Water Servs. v Saratoga County Water Auth., 83 NY2d 205, 213-214 [1994]; National Endowment for the Arts v Finley, 524 US 569, 580 [1998]).
[8] The case before us does not implicate First Amendment rights and defendant does not argue that the First Amendment overbreadth doctrine applies. Indeed, as the Supreme Court said when considering a vagueness challenge in Chapman v United States, "First Amendment freedoms are not infringed by [the statute at issue], so the vagueness claim must be evaluated as the statute is applied to the facts of this case" (500 US at 467; see also New York v Ferber, 458 US 747, 768-773 [1982]; Broadrick v Oklahoma, 413 US 601, 610-616 [1973]). By allowing a facial challenge after an unsuccessful as-applied challenge (see concurring op at 431-432), the concurrence explicitly would hold that a facial challenge on vagueness grounds can succeed even when the statute is not invalid in all its applications, but merely covers "a substantial amount of innocent conduct" (id. at 430). The concurrence thus improvidently imports overbreadth analysis into a vagueness case. We cautioned against this approach in Matter of Schulman v New York City Health & Hosps. Corp. (38 NY2d 234, 242 [1975]), where we noted that we have not "extend[ed the overbreadth doctrine] beyond the reach of the First Amendment." Indeed, the concurrence's approach would go even beyond overbreadth analysis in vagueness cases by striking down statutes that cover "innocent"but presumably not constitutionally protectedconduct. The overbreadth doctrine, however, calls for striking down a statute only when it covers a substantial amount of conduct protected by the First Amendment (see Ferber, 458 US at 768-770; Broadrick, 413 US at 612).
[9] The concurrence misconstrues our analysis by suggesting that a defendant on notice will be unable to raise a facial challenge (see concurring op at 432). This, however, is not the test. A defendant on notice may indeed challenge the statute facially where it is so vague that it leaves the police with arbitrary rather than enforceable standards in every application. Furthermore, we note that defendants are on notice when they should have known that their conduct was prohibited; not, as the concurrence suggests, when "they should have known that their conduct was meant to be proscribed by the challenged statute" (id. at 432 [emphasis added]).
[10] The Chief Judge has written a concurring opinion in which she raises concerns as to the proper analysis in cases of this type, and disagrees with the Court's approach. Because her observations are cogent and important, it is appropriate that we address the concurrence in detail. To begin with, we cannot agree that the Court's approach forecloses the possibility of successful facial challenges in the future (see concurring op at 430). If a defendant can show that the statute is so vague that it specifies no standard of conduct at all or leaves the police with arbitrary rather than proper standards for enforcement, we would, most assuredly, address and sustain a facial challenge because under those circumstances the statute could never be applied constitutionally. As the Chief Judge aptly points out, the defendants in Bright (and New York Trap Rock Corp.) made successful facial challenges, and we note that the challenges prevailed precisely because the statutes gave the police "complete discretion" (Bright, 71 NY2d at 385). Nothing in our analysis prevents defendants from making similar arguments in proper cases. We agree that it may sometimes be difficult to discern the point at which a statute is so vague as to justify a finding of facial invalidity, but this by no means involves an "unworkable standard" (see concurring op at 433). We simply apply the very same test that we employed in Bright and Trap Rock. It was no less workable in those cases than it will be in any future ones.

Under the concurrence, however, we are given no guidance as to when we should entertain a facial challenge. The concurrence does not tell us, for example, when (or why) we should reach the merits of a facial challenge after having rejected the defendant's as-applied challenge. Nor does the concurrence tell us when (or why) we should reach the merits of a facial challenge after having sustained the defendant's as-applied challenge. Indeed, in the case before us the concurrence has apparently concluded that the statute is facially valid, but unlike the majority offers no criterion as to when or why it is ever appropriate to reach this constitutional question (or why it has chosen to do so in this particular case). We appreciate that there is some disagreement on the general subject and commentators have debated it at length (see e.g. Hill, Some Realism About Facial Invalidation of Statutes, 30 Hofstra L Rev 647 [2002]; Fallon, As-Applied and Facial Challenges and Third-Party Standing, 113 Harv L Rev 1321 [2000]; Note, Stranger in a Strange Land: The Use of Overbreadth in Abortion Jurisprudence, 99 Colum L Rev 173 [1999]; Dorf, Facial Challenges to State and Federal Statutes, 46 Stan L Rev 235 [1994]), but we believe our approach is the more practical and eminently more predictable one in dealing with this difficult problem.
The concurrence uses Coates (402 US 611 [1971]) to illustrate how a defendant can lose an as-applied challenge to a statute that was facially unconstitutional. Under our analysis, howeverand under the analysis employed by the Coates CourtCoates would not have lost his as-applied challenge. Given that the statute was unconstitutional on its face, it could not possibly have been applied constitutionally to any single defendant. As the Court said, states may penalize certain conduct, but may not "do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed" (id. at 614). Thus, while Coates's conduct may (or may not) have been punishable under a valid statute (see id. at 616 [op of the Court]; id. at 617 [op of Black, J.]), all convictions under the vague statute were invalid.
That approach, and the one we follow today, rules out what would otherwise result in odd or troubling scenarios (if we were to adopt the concurrence's rationale). Take for example the defendant who makes only an as-applied vagueness challenge. If we reject it, the statute would be constitutional as applied to that defendant, but its facial validity would not have been considered. Eventually, however, another defendant could raise a facial challenge to the same statute. Under the concurrence's approach, we could properly entertain it and, indeed, strike down the statute on its face. Thus, the defendant's conviction in the first case will have been upheld based on a statute later found unconstitutional on its face. Even though this sequence may occur in instances where the defendant in the initial case fails to preserve certain arguments for review which the later defendant properly raises, there is a critical difference here. By rejecting the as-applied challenge in the first case, the Court would necessarily have held that the statute provides police adequate guidance for enforcement (the second prong of the vagueness test). The second case, therefore, far from deciding a question not presented in the first litigation, would actually invite the Court to eviscerate the first decision by concluding that the very same statute does not in fact provide the police with adequate guidance.
Lastly, the concurrence is mistaken when it says that the approach we follow today originated in United States v Salerno (481 US 739 [1987]) (see concurring op at 429-430). In fact, five years before that case the Supreme Court had set forth the very same rule in Hoffman Estates v Flipside (455 US 489, 494-495, 497 [1982]) and did so again in Members of City Council of City of Los Angeles v Taxpayers for Vincent (466 US 789, 796 [1984]). Moreover, contrary to the concurrence's assertion, the Supreme Court has never repudiated this rule or overruled any of these cases. To the extent the concurrence relies on City of Chicago v Morales (527 US 41 [1999]) for that proposition, we note that Justice Stevens was joined by only two members of the Court when he objected to the "no valid applications" rule (see id. at 51-56).
[11] Defendant's argument that he may challenge the anti-stalking statute on its face because it infringes "upon a liberty interest protected by the Fourteenth Amendment Due Process Clause" (see Morales, 527 US at 53-54 [plurality op]) is not preserved for our review.
[12] Subdivision (3) of Penal Law § 120.45 is not before us.
[13] See National Institute of Justice, Project to Develop a Model Anti-Stalking Code for States, at 43-48 (1993).
[1] Notably, McGowan v Burstein (71 NY2d 729 [1988]), and Matter of Wood v Irving (85 NY2d 238 [1995])cited by the Court (majority op at 423-424)are civil cases (see Kolender v Lawson, 461 US 352, 358 n 8 [1983] ["where a statute imposes criminal penalties, the standard of certainty is higher," citing Winters v New York, 333 US 507, 515 (1948)]).
[2] See City of Chicago v Morales (527 US 41, 55 n 22 [1999] [Stevens, J. (plurality op)] [pointing out that the Salerno "no-conceivable-circumstances" formulation was dictum and that such a standard had "never been the decisive factor in any decision of this Court, including Salerno itself," and concluding that a facial challenger need not "establish that no set of circumstances exists under which the Act would be valid"]); Kolender (461 US at 358 n 8 [explaining that the Supreme Court has "invalidate(d) a criminal statute on its face even when it could conceivably have had some valid application," citing e.g. Lanzetta v New Jersey, 306 US 451 (1939)]). See also Dorf, Facial Challenges to State and Federal Statutes (46 Stan L Rev 235, 236, 238 [1994] [observing that the rule in Salerno "neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles"]).