People v Gunther (2024 NY Slip Op 24049)

[*1]

People v Gunther (Michael)

2024 NY Slip Op 24049

Decided on February 21, 2024

Appellate Term, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Miscellaneous Reports.

Decided on February 21, 2024
SUPREME COURT, APPELLATE TERM, FIRST DEPARTMENT

PRESENT: Hagler, P.J., Brigantti, Perez, JJ.

570854/15

The People of the State of New York, Respondent,
against
Michael Gunther, Defendant-Appellant.

In consolidated appeals, defendant appeals (1) from a judgment of the Criminal Court of the City of New York, New York County (Ann E. Scherzer, J.), rendered August 6, 2015, after a nonjury trial, convicting him of stalking in the fourth degree and harassment in the second degree, and imposing sentence and (2) a judgment (same court and Judge), rendered August 6, 2015, convicting him, upon his plea of guilty, of criminal contempt in the second degree, and imposing sentence.

Per Curiam.
Judgment of conviction (Ann E. Scherzer, J.), rendered August 6, 2015, on docket number 2015NY029541, reversed, on the law, and the accusatory instrument dismissed. Judgment of conviction (Ann E. Scherzer, J.), rendered August 6, 2015, on docket number 2014NY055285, reversed, on the facts and as a matter of discretion in the interest of justice, and the accusatory instrument dismissed.
The verdict convicting defendant of fourth-degree stalking and second-degree harassment under docket number 2014NY055285 was against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348—349 [2007]). The evidence at trial showed that defendant and complainant Laura Kiselevach had been friends for over ten years; that Kiselevach and her partner Katherine Rudin connected defendant with an organization that arranged for defendant to foster a shelter rescue dog that Kiselevach knew had serious behavioral problems; that when the dog bit defendant on the face, Kiselevach arranged for the dog's removal and relocation; that the dog subsequently bit another person, killed another dog and then was euthanized; and that two years later, on July 2, 2014, defendant sent a text message expressing "feelings of anger and resentment" because neither Kiselevach nor Rudin had expressed any "appreciation" for the "time and energy" he had devoted to the dog and the absence of "apology [from them] for the results." When Kiselevach did not respond, defendant sent a second text message on July 9, 2014, asking [*2]if his first "message was received" and referencing "legal" or other "action." On July 10, 2014, defendant went to the complainant's building to retrieve a set of keys from the doorman and dropped off an envelope that contained a letter stating the same language as the July 2, 2014 text message. Finally, on July 16, 2014, defendant dropped off another envelope addressed to "Kate and Laura" containing two flyers: the first flyer blamed Rudin for the closing of Saint Vincent's Hospital, as her family's real estate company sat on the hospital's board, described her as the "ogre of the West Village" and the "devil incarnate," and accused her of residing in Southampton in order to "keep a low profile (but rake in the millions$$)." The second flyer essentially criticized Rudin's art, distinguishing "good art" - described as coming from "anger, loss and desperation" - from "bad art," which came from "trust-fund ogres" and sitting in "South Hampton [sic] art galleries." 
Under these particular circumstances, we find it appropriate to exercise our statutory authority to reverse defendant's conviction of second-degree harassment and fourth-degree stalking as against the weight of the evidence and in the interest of justice (see CPL 470.15[3][b],[c]); People v Morgan, 99 AD3d 622 [2012]). Defendant's text messages and the first letter merely expressed feelings of resentment towards the complainants for their lack of appreciation for defendant's efforts in caring for the dog and the absence of any apology after he was bitten in the face. With respect to the flyers, defendant was commenting on a significant issue in their neighborhood, the closing of the hospital, as well as his opinion of Rudin's artwork. Viewed in the "context of the [parties'] prior relationship" (People v Ubbink, 120 AD3d 1574 [2014]), the evidence failed to establish beyond a reasonable doubt that defendant's conduct was likely to cause reasonable fear to the physical health and safety of complainant and Rudin and was for no legitimate purpose (see People v Stuart, 100 NY2d 412, 428 [2003]) or that it was intended to harass, annoy or alarm (see People v Hurd, 162 AD3d 551 [2018], lv denied 32 NY3d 1004 [2018]).
The accusatory instrument charging defendant with second-degree criminal contempt was jurisdictionally defective. The instrument lacked sufficient "facts of an evidentiary character" (CPL 100.15[3]) to establish the basis of Kiselevach's belief that the person who contacted her on Facebook was the person she knew as defendant (see People v Shaw, 2002 NY Slip Op 40486[U] [App Term, 2d Dept, 9th and 10th Jud Dists 2002]; cf People v Reyes, 64 Misc 3d 126[A], 2019 NY Slip Op 50961[U] [App Term, 1st Dept 2019], lv denied 34 NY3d 936 [2019]).
In view of our disposition, we reach no other issue.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: February 21, 2024