# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 73
In the Matter of Independent
Insurance Agents and Brokers of
New York, Inc., et al.,
     Respondents,
et al.,
     Petitioners,
       v.
New York State Department of
Financial Services et al.,
     Appellants.

Sarah L. Rosenbluth, for appellants.
Howard S. Kronberg, for respondents.

SINGAS, J.:

Petitioners challenge the validity of the recently amended Insurance Regulation 187

(11 NYCRR part 224), which provides protections to consumers engaging in life insurance

and annuity transactions. Because the Department of Financial Services (DFS)

appropriately exercised its authority to create a carefully considered and clear regulation, we find no basis to invalidate the regulation.

I.

Insurance Regulation 187 was first promulgated as an emergency regulation in 2010, and as a final regulation in 2013. The regulation was intended to ensure that "the insurance needs and financial objectives of consumers" were addressed when entering into annuity contracts, and to update New York's regulations to mirror national model rules (*see* former Department of Financial Services Regulations [11 NYCRR] § 224.0). The regulation originally required that insurance producers—i.e., agents and brokers—and insurers have "reasonable grounds for believing that [a] recommendation is suitable for the consumer on the basis of the facts disclosed by the consumer as to the consumer's investments and other insurance policies or contracts and as to the consumer's financial situation and needs, including the consumer's suitability information" (*id.* § 224.4 [a]). It also required a recommender to have a reasonable basis to believe that the consumer was informed of the features of the contract, that the consumer would benefit from the contract, and that the contract was suitable to the consumer, taking into account the consumer's "suitability information" (*id.* § 224.4 [a] [1]-[4]). In the original version, "recommendation" was defined as "advice provided by an insurance producer, or an insurer where no insurance producer is involved, to a consumer that results in a purchase or replacement of an annuity contract in accordance with that advice" (*id.* § 224.3 [c]). "Suitability information" was defined to include several considerations including age, income, financial needs and objectives, and risk tolerance (*see id.* § 224.3 [e]).

In 2018, following two rounds of public comment and a revised proposal and regulatory impact statement, DFS amended the regulation. The amendment addressed concerns that the purchase of annuities and life insurance had become increasingly complex with more products available to purchase. DFS reasoned that consumers, finding themselves more reliant on professional advice in order to understand the options available and to make purchasing decisions, had become more susceptible to producers and insurers recommending transactions that prioritized their own compensation over the consumer's best interest (*see* Revised Regulatory Impact Statement for the First Amendment to 11 NYCRR 224 [Insurance Regulation 187] 2-4 [2018] [Revised Impact Statement]). The amendment accordingly extended the scope of the regulation to cover both annuity and life insurance contracts, and created a new standard applicable when producers and insurers make "recommendations" to consumers. The amended regulation, which applies to both "sales transactions" and "in-force transactions" (*see* 11 NYCRR 224.3 [i]-[k]), requires that producers, or insurers when no producer is involved, act in the "best interest of the consumer" when making a "recommendation" (*id.* §§ 224.4, 224.5). A similar requirement, derived from the National Association of Insurance Commissioners' Model Regulation 275, applies in dozens of other states[1] (*see* National Association of Insurance

---

[1] *See e.g.* Ala Admin Code rule 482-1-127; Ariz Rev Stat § 20-1243 *et seq.*; 054.01.20 Ark Code R § 9; Conn Agencies Regs § 38a-432a-1 *et seq.*; 18 Del Admin Code § 1214-1.0 *et seq.*; Idaho Code § 41-1940 *et seq.*; Iowa Admin Code rule 191-15.72 *et seq.*; 806 Ky Admin Regs 12:120; 02-031-917 Me Code R § 1 *et seq.*; Md Code Regs § 31.09.12.01 *et seq.*; Mich Comp Laws § 500.4151 *et seq.*; 19 Miss Code R § 2-18.01 *et seq.*; Mont Code Ann § 33-20-801 *et seq.*; Neb Rev Stat § 44-8101 *et seq.*; NM Code R § 13.9.20.1 *et seq.*; ND Cent Code § 26.1-34.2-01 *et seq.*; Ohio Admin Code 3901-6-13; 40 Pa Stat and Cons

Commissioners, NAIC Model Laws, Regulations, Guidelines and Other Resources, Suitability in Annuity Transactions Model Regulation [spring 2022], available at https://content.naic.org/sites/default/files/inline-files/MDL-275.pdf [last accessed Oct. 18, 2022]).

The amended regulation explains in detail what a producer or insurer must do to discharge this duty when making a recommendation with respect to sales transactions. The producer or insurer must, among other things: make "reasonable efforts" to obtain the consumer's "suitability information"; base any recommendation "on an evaluation of the relevant suitability information" that "reflects the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use under the circumstances then prevailing"; "[o]nly [consider] the interests of the consumer . . . in making the recommendation" and not be influenced by compensation or other incentives; recommend only "suitable" transactions; and have a "reasonable basis" to believe that the consumer has been reasonably informed of the features of the policy, the potential consequences of the transactions, both favorable and unfavorable, and that the consumer

---

Stat § 627-1 *et seq.*; 230-20 RI Code R § 25-1.1 *et seq.*; Tex Ins Code Ann art 1115.001 *et seq.*; 14 Va Admin Code § 5-45-10 *et seq.*; Wis Stat § 628.347; *see also e.g.* 3 Colo Code Regs § 702-4-1-11-1 *et seq.*, as amended by 19 Colo Reg 1333-1351 (Oct. 2022) (eff Nov. 1, 2022); Haw Rev Stat 431:10D-621 *et seq.*, amended by 2022 Haw Sess Laws act 58 (eff Jan. 1, 2023); Minn Stat § 72A.203, *et seq.*, as amended by 2022 Minn Laws, ch 84 (eff Jan. 1, 2023); 11 NC Admin Code 12.0462 (eff Jan. 1, 2023); SC Code Ann Regs § 69-29 (eff Nov. 27, 2022); SD Codified Laws § 58-33A-13 *et seq.*, as amended by 2022 SD Sess Laws, ch 186 (eff Jan. 1, 2023).

would benefit from certain features of the policy and the particular policy as a whole (11 NYCRR 224.4 [b]).[2]

The original regulation did not define the term "suitable." DFS noted that, in implementing the original version of the regulation, the lack of a definition for the term "suitable" had been a "significant shortcoming," given that DFS had "encountered uncertainty and disagreement in the industry about what it means to be suitable" (Revised Impact Statement at 5). DFS therefore incorporated a new definition of the term into the amended regulation: "in furtherance of a consumer's needs and objectives under the circumstances then prevailing, based upon the suitability information provided by the consumer and all products, services, and transactions available to the producer" (11 NYCRR 224.3 [h]).

The amendment took effect in August 2019 for annuities and in February 2020 for life insurance policies (*id.* § 224.9).

## II.

In November 2018, petitioners Independent Insurance Agents and Brokers of New York, Inc., and Testa Brothers Ltd.[3] commenced this CPLR article 78 proceeding alleging that the amended regulation is unconstitutionally vague because certain key terms,

---

[2] The requirements for recommendations regarding in-force transactions are the same, except that the recommender is not required to collect or consider "suitability information," and there is no corresponding requirement that the in-force transaction be "suitable" (*see* 11 NYCRR 224.5 [b]).

[3] Petitioners Professional Insurance Agents of New York State, Inc. and Gary Slavin are not parties to this appeal.

including "best interest," "recommendation," and "suitability information," are indefinite, ambiguous, and subjective, and thus, incapable of satisfying the test for constitutional vagueness.[4]  Petitioners also contended that DFS exceeded its authority in promulgating the amendment because it purportedly conflicts with the statutory scheme and the common law, and constitutes improper policymaking.  Petitioners finally alleged that DFS violated the State Administrative Procedure Act (SAPA), and that the amendment was arbitrary and capricious, unreasonable, and lacked a rational basis.  DFS answered and moved to dismiss the petition.

Supreme Court granted DFS's motion (65 Misc 3d 562 [Sup Ct, Albany County 2019]).  The court held that the amendment was "a proper exercise of the powers granted to the DFS Superintendent, that it [was] not an attempt by DFS to improperly legislate, and that it [was] neither arbitrary [n]or capricious" (*id.* at 577).  The court reasoned that "[a]gainst a backdrop of legitimate concerns for consumers, the burgeoning market of increasingly complex insurance and annuity products, and the rather remarkable lapse rate the market is experiencing, the [a]mendment is interstitial—consistent with underlying statutory purposes—and reflects a rational and reasonable movement towards consumer protection" (*id.* [citation omitted]).  The court also rejected the argument that the amendment is unconstitutionally vague, holding that "in fact, it is clear and quite self-

_____

[4] On the same day, The National Association of Insurance and Financial Advisers – New York State, Inc. (NAIFA) commenced a combined CPLR article 78 proceeding and declaratory judgment action seeking similar relief.  Supreme Court granted a motion to consolidate the two proceedings.  The parties to that action did not appeal from Supreme Court's order dismissing their petition.

explanatory" in providing that the producer must act in the best interest of the consumer and "contain[ing] precise definitions of the issues highlighted by . . . petitioners," including "consumer" and "recommendation" (*id.*). Petitioners appealed.

The Appellate Division unanimously reversed the judgment, granted the petition, and declared the amendment unconstitutional (195 AD3d 83 [3d Dept 2021]). The Court held that the amended regulation was unconstitutionally vague, reasoning that while its goals were "laudable, as written, [it] fails to provide sufficient concrete, practical guidance for producers to know whether their conduct, on a day-to-day basis, comports with the amendment's corresponding requirements for making recommendations and compiling and evaluating the relevant suitability information of the consumer" (*id.* at 87). DFS appealed as of right to this Court (*see* CPLR 5601 [b] [1]).

### III.

"A statute, or a regulation, is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and it is written in a manner that permits or encourages arbitrary or discriminatory enforcement" (*Ulster Home Care v Vacco*, 96 NY2d 505, 509 [2001] [internal quotation marks omitted]; *accord People v Stephens*, 28 NY3d 307, 312 [2016]; *Hoffman Estates v Flipside, Hoffman Estates, Inc.*, 455 US 489, 497-499 [1982]). "It has long been settled that civil as well as penal statutes can be tested for vagueness under the due process clause" (*Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235, 256 [2010] [internal quotation marks omitted], *cert denied sub nom. Tuck-It-Away, Inc. v New York State Urban Dev. Corp.*, 562 US 1108 [2010]). The "degree of vagueness that the [c]onstitution tolerates . . . depends

in part on the nature of the enactment," such that "economic regulation is subject to a less strict vagueness test" (*see Hoffman*, 455 US at 499).

Courts use a two-part test to determine whether a statute or regulation is unconstitutionally vague (*see Stephens*; 28 NY3d at 312-313; *People v Stuart*, 100 NY2d 412, 420 [2003]; *Ulster Home Care*, 96 NY2d at 509 [regulation]; *People v Nelson*, 69 NY2d 302, 307 [1987]).  First, "[t]o ensure that no person is punished for conduct not reasonably understood to be prohibited, the court must determine whether the statute in question is 'sufficiently definite to give a person of ordinary intelligence fair notice that [the person's] contemplated conduct is forbidden' " (*Stuart*, 100 NY2d at 420, quoting *Nelson*, 69 NY2d at 307 [internal quotation marks omitted]).  Second, the court must "determine 'whether the enactment provides officials with clear standards for enforcement' so as to avoid 'resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application' " (*Stephens*, 28 NY3d at 312, quoting *Stuart*, 100 NY2d at 420-421).  The two prongs of the test are "closely related"—"[i]f a statute is so vague that a potential offender cannot tell what conduct is against the law, neither can" the person charged with its enforcement (*Stuart*, 100 NY2d at 420-421).

No enforcement action has been taken against petitioners under the amendment, and their challenge to the regulation is therefore solely facial.  "[F]acial challenges to statutes are generally disfavored" (*id.* at 422).  "[A] facial challenge requires the court to examine the words of the statute on a cold page and without reference to the [complaining party's] conduct.  In pursuing a facial challenge, the [complaining party] must carry the heavy burden of showing that the statute is impermissibly vague in *all* of its applications" (*id.* at

421 [internal quotation marks and citations omitted]). "That would be true, for example, when vagueness permeates a statute to the point where no standard of conduct is specified at all or where the vagueness in the statute is so great that it permits [the] exercise [of] unfettered discretion in every single case" (*Stuart*, 100 NY2d at 421). In other words, that a statute or regulation would be unclear in hypothetical situations at its periphery does not render it facially, unconstitutionally vague.

Petitioners argue that three terms in the amended regulation render it unconstitutionally vague on its face because these terms fail to provide notice of what conduct is or is not permitted: "recommendation," "suitability information," and "best interest."

The duty to act in the best interest of the consumer applies when a producer makes a "recommendation" regarding a transaction (11 NYCRR 224.4 [a]; 224.5 [a]). As defined in the amended regulation, "recommendation" has both an objective and a subjective meaning. The objective definition is a statement or act that "reasonably may be interpreted by a consumer to be advice and that results in a consumer entering into or refraining from entering into a transaction in accordance with that advice" (*id.* § 224.3 [e] [1]). The subjective definition is a statement or act that "is intended by the producer, or an insurer where no producer is involved, to result in a consumer entering into or refraining from entering into a transaction" (*id.* § 224.3 [e] [2]). The regulation also clarifies that "general factual information to consumers, such as advertisements, marketing materials, general education information regarding insurance or other financial products[,] and general administrative services to the consumer" are not "recommendations" (*id.*). It further states

that "recommendation" "does not include use of an interactive tool" that provides certain limited information (*id.*).

The regulation's text shows that DFS carefully considered what communications would and would not be considered "recommendations" and provided a clear definition employing standard legal terminology. With respect to the objective definition, petitioners argue that the phrase "may be interpreted by a consumer" is too amorphous and generalized to give notice of what conduct is prohibited, but ignore that the standard is explicitly limited to conduct that "*reasonably* may be interpreted by a consumer to constitute advice" (*id.* § 224.3 [e] [1] [emphasis added]). Indeed, the Court has previously concluded that an objective reasonableness standard is sufficiently definite, and even necessary to support a regulation that could otherwise be subjective. For example, in *Stephens*, the Court distinguished two noise ordinances, one which prohibited "unnecessary noise" defined as "excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, or safety of a person" (28 NY3d at 313) and the other which prohibited identical conduct, save that it applied only when the noise would disturb "a reasonable person of normal sensibilities" (*id.* at 310). The Court found that the latter ordinance was valid, precisely because it used the objective reasonableness standard. This is in line with our recognition that "[a] statute which employs terms having an accepted meaning long recognized in law and life cannot be said to be so vague and indefinite as to afford . . . insufficient notice of what is prohibited or inadequate guidelines for adjudication" (*People v Cruz*, 48 NY2d 419, 428 [1979] [internal quotation marks omitted]). The subjective standard is, if anything, even clearer than the objective one.

Under that section, a communication can be a "recommendation" only if the producer *intends* for a consumer to enter into or refrain from entering into a transaction based on the communication. Whether a communication falls within this definition therefore turns solely on the producer's own state of mind, of which the producer alone is in control. This rules out the possibility of violating the regulation "by accident, inadvertence, or chance" (*see Stuart*, 100 NY2d at 426-427).

Petitioners have failed to demonstrate that "recommendation" is unconstitutionally vague. Employing long-accepted terms, the definition establishes clear, objective legal guidelines to ensure that a communication's legal impact will not depend on the sensitivities of a communication's recipient, and is both sufficiently definite to provide notice to those regulated and to prevent arbitrary enforcement. The result is broad categories of conduct for which the application of the term "recommendation" is clear.

Second, petitioners argue that the term "suitability information" is vague. Acting in the "best interest" of the consumer requires a producer or insurer to collect and consider the consumer's "suitability information" and, taking that information into account, make a "recommendation" that furthers the consumer's needs and objectives (11 NYCRR 224.3 [h]; 224.4 [b] [2], [3] [iii]; [d]). "Suitability information" is defined as "information that is reasonably appropriate to determine the suitability of a recommendation commensurate with the materiality of the transaction to a consumer's financial situation at the time of the recommendation and the complexity of the transaction recommended" (*id.* § 224.3 [g]). This includes "some or all" of eight categories of information for life insurance (*id.* § 224.3 [g] [1] [i]-[viii]) and 13 for annuities (*id.* § 224.3 [g] [2] [i]-[xiii]), along with "any other

information provided by the consumer which in the reasonable judgment of the producer, or the insurer where no producer is involved, is relevant to the suitability of the transaction" (*id.* § 224.3 [g] [1] [ix]; [2] [xiv]). The enumerated categories include information about the consumer's age, annual income, financial situation and needs, financial objectives and experience, intended use of the policy, financial time horizon, existing assets, liquidity needs and liquid net worth, risk tolerance, and tax status (*see id.* § 224.3 [g]). Read as a whole, the regulation specifies that information that is not in one of the enumerated categories and is not provided by the consumer need not be considered for a producer to comply with the best interest standard (*see id.* § 224.3, 224.4 [b] [1]).

Before the amendment, the general definition of "suitability information" was the same: "information that is reasonably appropriate to determine the suitability of a recommendation" (*compare id.* § 224.3 [g] [1], [2], *with* former 11 NYCRR 224.3 [e]). The amended regulation clarifies that the information reasonably appropriate to determine the suitability of a transaction may vary depending on "the materiality of the transaction to a consumer's financial situation at the time of the recommendation and the complexity of the transaction recommended" (11 NYCRR 224.3 [g] [1], [2]); creates specific sections for life insurance and annuities (*compare id.* § 224.3 [g] [1], *with* [2]); and adds a handful of data that are included in "suitability information."

Within the definition of "suitability information," petitioners argue that the terms "recommendation," "materiality," "consumer," "financial situation," and "complexity" are too vague to give notice of what is and is not "suitability information." As discussed, the term "recommendation" has a specific definition within the regulation which is not vague.

The same is true for "consumer" (*id.* § 224.3 [a]; *see also infra*). The term "financial situation" was used in the prior regulation, and plainly refers to a consumer's investments, wealth, income, and similar financial factors as they relate to both the appropriateness of the contract's benefits, and the consumer's ability to pay the policy premiums. Finally, that the terms "materiality" and "complexity" do not have specific and concrete definitions is an intended feature of the amendment and does not render them impermissibly vague. The amended regulation provides that a producer or insurer may need to consider more data for the complex types of transactions that were the impetus for the amendment, and similarly more information may be needed when the transaction involves a significant change to the consumer's finances. Overall, though the regulation provides flexibility as to what exact information a producer or insurer must consider for a particular consumer, the definition of "suitability information" provides clear boundaries for what must be considered. Accordingly, petitioners failed to meet their burden to show the facial vagueness of this term.

Petitioners' final vagueness argument pertains to the term "best interest." Petitioners first argue that it is unclear in whose best interest a producer must act when making a "recommendation." The regulation provides an explicit answer: producers "shall act in the best interest of the consumer" (11 NYCRR 224.4 [a]), i.e., the "owner or prospective purchaser of a policy" (*id.* § 224.3 [a]).[5] As to the term "best interest" itself,

---

[5] Contrary to petitioners' assertions, this rule does not engender confusion when a beneficiary is involved: when the owner of a policy directs a producer to consider the

the regulation employs standard legal terms to explain exactly what a producer has to do to discharge this duty—namely, employ "the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use under the circumstances then prevailing"; collect and evaluate the consumer's "suitability information"; confirm that any recommended transaction is "suitable" for the consumer; ensure that there is a reasonable basis to believe that the consumer will benefit from the recommended policy's features; document and disclose to the consumer the basis for the "recommendation"; and refrain from considering the producer's own potential gain from a given transaction (*id.* § 224.4). Contrary to petitioners' arguments, following these steps does not require producers and insurers to identify the single best policy for a consumer. It simply requires them to reasonably recommend a suitable policy that will benefit the consumer, while refraining from considering their own financial gain. Like the others, this vagueness argument lacks merit.

Because petitioners have not established that the amendment will fail to give notice of its requirements in every application, we conclude that the amended regulation is not impermissibly vague on its face.

IV.

Petitioners raise three alternative arguments for invalidating the amendment that the Appellate Division did not reach: that DFS exceeded its authority in promulgating the

_____

interests of a beneficiary, then that could be in the consumer's best interest. But, if the owner's and beneficiary's interests are at odds with each other, the owner's control.

amended regulation, that DFS violated SAPA, and that the amended regulation is arbitrary

and capricious.[6]  Each of these arguments is unavailing.

A.

A governmental agency exceeds the scope of its delegated authority in promulgating

a regulation when it engages in impermissible "legislative policy-making," as opposed to

permissible "administrative rule-making" (*Boreali v Axelrod*, 71 NY2d 1, 11 [1987]).

Several factors assist courts in differentiating between the two:

> "whether (1) the agency did more than balance costs and benefits according to preexisting guidelines, but instead made value judgments entailing difficult and complex choices between broad policy goals to resolve social problems; (2) the agency merely filled in details of a broad policy or if it wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance; (3) the legislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve; and (4) the agency used special expertise or competence in the field to develop the challenged regulation" (*Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv.*, 27 NY3d 174, 179-180 [2016] [internal quotation marks, citations, and alterations omitted]; *accord Boreali*, 71 NY2d at 12-14).

These factors are flexible, do not constitute a checklist or a headcount, and are exemplary

rather than exhaustive (*see Matter of NYC C.L.A.S.H.*, 27 NY3d at 180).  The *Boreali*

---

[6] Petitioners also make unpreserved general overbreadth arguments along with their vagueness claims, based in part on the Appellate Division's reference to the breadth of the statute's definitional language (*see* 195 AD3d at 87-88).  But overbreadth implicates the First Amendment, and vagueness concerns due process.  These analytically distinct considerations should not be conflated (*see Stephens*, 100 NY2d at 422 n 8).

analysis is, at its core, a recognition that "elected representatives, rather than appointed administrators" should resolve difficult social problems (*id.*).

We reject plaintiff's argument that DFS crossed the line into impermissible "legislative policymaking" (*Boreali*, 71 NY2d at 11). The legislature has given DFS the authority to supervise "persons providing[ ] financial products and services" (Financial Services Law § 201 [a]) and to establish "professional standards of conduct" for insurance producers (Insurance Law § 2104 [a] [2]). The legislature's stated objectives for the Financial Services Law are ensuring the "prudent conduct of the providers of financial products and services"; "encourag[ing] high standards of honesty, transparency, fair business practices and public responsibility"; and "eliminat[ing] financial fraud, other criminal abuse and unethical conduct in the industry" (Financial Services Law § 201 [b]). A regulation that is aimed at ensuring that consumers buying insurance are doing so with the relevant information—and without fear that the salesperson is acting in their own contrary interest—falls squarely within those directives, and simply fills in the details of the legislature's pre-stated policy. Moreover, in the complex area of insurance transactions, DFS's specific expertise "was necessary to flesh out details of the broadly stated legislative policies" (*see Matter of NYC C.L.A.S.H*, 27 NY3d at 184), as evidenced by its employment of over a decade of experience and study in administering the prior regulation. Finally, there was no failed legislative effort to institute these changes. Rather, DFS was creating rules to clarify producers' and insurers' duties, and provide protection to consumers of insurance products. Accordingly, DFS did not exceed its authority in promulgating the amendment.

B.

SAPA lays out rules that agencies must follow when promulgating regulations and creating agency guidance. Petitioners argue that DFS violated three of its provisions. First, SAPA requires agencies to include in a regulatory impact statement the "best estimate" of a regulation's projected costs (State Administrative Procedure Act § 202-a [3] [c] [iv]). The costs required to be estimated are the "additional expenditures required" by the rule (*Matter of Industrial Liaison Comm. of Niagara Falls Area Chamber of Commerce v Williams*, 72 NY2d 137, 145 [1988]). This "does not mean that, in all cases, an agency must project an actual dollar figure. Rather, a best estimate could be a range within which the agency anticipates the actual cost will fall" (Governor's Approval Mem, Bill Jacket, L 1990, ch 850 at 14). DFS carefully considered these costs and sought to curtail them by providing a flexible compliance system:

> "The amendment was specifically designed to allow producers to leverage existing practices and file management systems. . . . This amendment identifies certain suitability information that the producer should be asking their clients, if not already doing so. Although some producers and insurers have expressed an intention to create new forms or new file management systems, that is not required to comply with this amendment" (*see* Revised Impact Statement at 8-9).

Though DFS did not give a dollar figure of expected costs, SAPA does not require such an exact estimate. Moreover, providing a precise dollar figure would be contrary to DFS's approach of allowing producers to determine the best way to comply with the regulation's requirements in order to reduce their costs. In light of this approach, DFS predicted that the costs to producers "are expected to be minimal, because, as [DFS] understands it, many

insurers have already developed procedures to prevent financial exploitation and abuse" and rejected the "leading industry trade group['s]" estimate of $5-10 million as "overinflated." DFS also noted that "[t]he rule does not impose additional costs to [DFS] or other state government agencies or local governments. [DFS] will monitor and enforce the regulation within its existing enforcement authority" (*id.*). This evaluation was in substantial compliance with section 202-a [3] [c] [iv]'s requirements (*see* State Administrative Procedure Act § 202 [8]).

Second, SAPA also requires that the regulatory impact statement identify "whether the rule exceeds any minimum standards of the federal government for the same or similar subject areas and, if so," provide "an explanation of why the rule exceeds such standards" (State Administrative Procedure Act § 202-a [3] [h]). The Revised Impact Statement explained the status of federal regulation on the same topic and the differences between the two, and concluded that the amendment was "necessary for the Protection of [New York] consumers as to the life insurance and annuity products within its own purview" (Revised Impact Statement at 4, *see also* 14-15). This protection makes sense because "[f]ederal agencies . . . have only concurrent jurisdiction with [DFS] over those products that are both insurance products and securities; the regulation of all other life insurance and annuity products and sales is within the sole purview of [DFS]" (Second Assessment of Public Comments to the First Amendment to 11 NYCRR 244 [Insurance Regulation 187] [2018] [Second Assessment of Public Comments]). DFS's analysis and explanation satisfies SAPA's requirements in this regard.

Finally, SAPA requires agencies to "consider utilizing approaches that will accomplish the objectives of applicable statutes while minimizing any adverse economic impact of the rule on small businesses" (State Administrative Procedure Act § 202-b [1]). DFS extensively analyzed the amendment's impact on small businesses, altered the amendment in response to commenters' concerns, and issued a regulatory flexibility analysis including a clarification of the amendment's impact on small businesses (*see* First Assessment of Public Comments to the First Amendment to 11 NYCRR 244 [Insurance Regulation 187] [2018]; 40 NY Reg, May 16, 2018 at 16). DFS explained that "[p]roducers that are small businesses subject to this amendment will likely incur minimal costs" because "producers will already have in place standards and procedures that can be leveraged to comply with th[e] amendment," (40 NY Reg, May 16, 2018 at 16; *accord* Revised Impact Statement at 10-11). Because DFS adequately considered and analyzed the costs to small businesses, this argument also fails, and petitioners' contention that DFS violated SAPA therefore lacks merit.

## C.

We finally conclude that the amendment is not arbitrary or irrational. "[A]n administrative regulation will be upheld only if it has a rational basis, and is not unreasonable, arbitrary or capricious" (*New York State Assn. of Counties v Axelrod*, 78 NY2d at 166). "If a regulation is to be nullified, the challenger must establish that it is so lacking in reason for its promulgation that it is essentially arbitrary" (*Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999] [internal quotation marks omitted]). So long as the regulation is "genuine[ly] reasonable[ ] and rational[ ]" it should be upheld—courts should

not scrutinize the "policy considerations underlying the" regulation (*New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166-167 [1991] [internal quotation marks omitted]). The goal of the amendment is straightforward and supported by the administrative record, and the amendment is plainly tailored to achieve those objectives. Ultimately, petitioners' quarrel is with the policy and objectives of the regulation, not with its rationality. DFS reasonably concluded that the "best interest" framework was needed to protect consumers, and petitioners cannot show that the amended regulation is "essentially arbitrary."

V.

Each of petitioners' arguments for invalidating the regulation is unavailing. Petitioners have fallen woefully short of their burden to sustain a facial due process challenge on vagueness grounds, and the extensive administrative record supporting the amended regulation refutes their alternative challenges.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.

Order reversed, with costs, and judgment of Supreme Court, Albany County, reinstated. Opinion by Judge Singas. Acting Chief Judge Cannataro and Judges Rivera, Garcia, Wilson and Troutman concur.

Decided October 20, 2022