People v Malloy (2024 NY Slip Op 03264)

People v Malloy

2024 NY Slip Op 03264

Decided on June 14, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, OGDEN, NOWAK, AND DELCONTE, JJ.

273 KA 22-01946

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ADAM MALLOY, DEFENDANT-APPELLANT. 

NATHANIEL L. BARONE, II, PUBLIC DEFENDER, MAYVILLE (HEATHER BURLEY OF COUNSEL), FOR DEFENDANT-APPELLANT.
JASON L. SCHMIDT, DISTRICT ATTORNEY, MAYVILLE (MICHAEL J. PISKO OF COUNSEL), FOR RESPONDENT. 

 Appeal from an order of the Chautauqua County Court (David W. Foley, J.), entered November 23, 2022. The order, insofar as appealed from, designated defendant a sexually violent offender pursuant to the Sex Offender Registration Act. 
It is hereby ORDERED that the order insofar as appealed from is reversed on the law without costs and the designation of defendant as a sexually violent offender is vacated.
Memorandum: Defendant appeals from an order insofar as it designated him a sexually violent offender under the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.). The sexually violent offender designation is based solely on defendant's 2010 conviction in Kansas of aggravated sexual battery, which required him to register as a sex offender in that state. As authority for the designation, which subjects defendant to lifetime registration as a sex offender in New York (see Correction Law § 168-h [2]) even though he is only a level one risk, the People rely on Correction Law § 168-a (3) (b) to the extent that it defines a sexually violent offense as including a "conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred."
Although defendant acknowledges that he qualifies as a sexually violent offender under the foreign registration clause of Correction Law § 168-a (3) (b), he contends that the provision is unconstitutional—both facially and as applied to him—under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. Defendant further contends that the foreign registration clause violates the Privileges and Immunities Clause of the Federal Constitution (US Const, art IV, § 2) because it discriminates against sex offenders who were convicted of qualifying offenses in a state other than New York. Inasmuch as defendant's qualifying out-of-state felony conviction was for a nonviolent offense, we agree with defendant that his constitutional right to substantive due process was violated by County Court's designation of him as a sexually violent offender.
The relevant facts are not in dispute. In February 2010, defendant entered a plea of no contest in the state of Kansas to one count of aggravated sexual battery (Kan Stat Ann former § 21-3518 [a] [3]), a felony under the Kansas Criminal Code. Aggravated sexual battery was defined in that statute to include, as relevant here, "the intentional touching of the person of another who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another . . . when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by, or was reasonably apparent to, the offender" (Kan Stat Ann former § 21-3518 [a] [3]). Pursuant to the plea agreement, defendant was sentenced to 36 months of probation and was required to register as a sex offender in Kansas. Defendant had no prior criminal record and served his term of probation without incident. Approximately 10 years later, defendant moved to New York.
Upon learning of defendant's new residence, the Board of Examiners of Sex Offenders (Board) determined that he was required to register as a sex offender in New York (see Correction Law § 168-k [2]). Based on its review of information relating to defendant's Kansas conviction, the Board submitted to the court a risk assessment instrument (RAI) recommending that defendant be adjudicated a level one risk. Notably, the Board recommended that no points be assessed under risk factor 1 for the use of violence and that defendant not be designated a sexually violent offender under Correction Law § 168-a (3) (b).
Although the People did not challenge the Board's recommendation with respect to the risk level and point assessments, they provided a departure statement contending that, contrary to the Board's determination, the court should designate defendant a sexually violent offender under Correction Law § 168-a (3) (b) based on the felony conviction in Kansas. Defendant thereafter filed a motion in which he challenged the constitutionality of section 168-a (3) (b), asserting, in relevant part, that the second disjunctive clause of the paragraph—defining a sexually violent offense to include a conviction of an out-of-state felony for which sex offender registration is required in the state of conviction—is not rationally related to any legitimate governmental purpose and indeed "misleads the public, and places an unwarranted lifetime stigma on those persons whose underlying offenses are not of a violent nature." In response, the People argued that "the designation of out-of-state defendants with registrable felony convictions is rationally related to a legitimate state interest," to wit, "protecting vulnerable populations (including the public at large) from potential harm by sex offenders." 
In its one-page order, the court determined that defendant is a level one risk and designated him a sexually violent offender. The court offered no explanation for rejecting defendant's constitutional claims. We now reverse the order insofar as appealed from and vacate the sexually violent offender designation.
As the Court of Appeals noted in People v Talluto (39 NY3d 306, 309 [2022]), SORA "provides for two circumstances in which a person convicted of an offense in another jurisdiction must register as a sex offender. One circumstance is where the offense satisfies an 'essential elements' test—i.e., the offense 'includes all of the essential elements' of an enumerated 'sex offense' or 'sexually violent offense' (§ 168—a [2] [d] [i]; [3] [b]). The other circumstance is where the offense falls within SORA's foreign registration requirements—i.e., 'a felony in any other jurisdiction for which the offender is required to register as a sex offender' therein (§ 168—a [2] [d] [ii]; [3] [b])."
Here, the People did not recommend that points be assessed against defendant for the use of violence and the People correctly concede that the offense of which defendant was convicted in Kansas, i.e., aggravated sexual battery, does not constitute a sexually violent offense under the essential elements test. The question presented is whether the second disjunctive clause of Correction Law § 168-a (3) (b), the foreign registration clause, withstands constitutional scrutiny as applied to defendant given the nonviolent nature of his underlying sex offense.
"Under the Fourteenth Amendment to the United States Constitution, a state government may not deprive an individual 'of life, liberty, or property, without due process of law' " (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d 187, 198 [2020], quoting US Const Fourteenth Amend, § 1). Due process review generally is comprised of two distinct analyses: procedural due process, the bedrock of which is notice and an opportunity to be heard (see People v Watts, — NY3d —, —, 2024 NY Slip Op 00926, *3 [2024]; People v Worley, 40 NY3d 129, 131 [2023]; People v David W., 95 NY2d 130, 138 [2000]), and substantive due process, i.e., the right to be free from "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them" (Zinermon v Burch, 494 US 113, 125 [1990] [internal quotation marks omitted]; see Johnson, 36 NY3d at 198).
Defendant does not raise any procedural objections to his designation, and thus our focus is exclusively on substantive due process, which "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised' " (Kaluczky v City of White Plains, 57 F3d 202, 211 [2d Cir 1995]). "Substantive due process 'provides heightened protection against government interference with certain fundamental rights and liberty interests' . . . , namely those [*2]rights and interests that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed' " (Johnson, 36 NY3d at 198, quoting Washington v Glucksberg, 521 US 702, 720, 721 [1997]).
There are several components of our substantive due process analysis. First, we must determine the level of review, i.e., "strict scrutiny or the rational basis test" (Johnson, 36 NY3d at 198). If "a 'fundamental' liberty interest" was impacted, then the infringement must be " 'narrowly tailored to serve a compelling state interest' " (id. at 199, quoting Reno v Flores, 507 US 292, 302 [1993]). "If 'no fundamental right is infringed[, the government action] is valid if it is rationally related to legitimate government interests' " (id., quoting People v Knox, 12 NY3d 60, 67 [2009], cert denied 558 US 1011 [2009]).
We agree with the People that, although a sexually violent offender designation affects a "liberty interest . . . [that] is substantial" (David W., 95 NY2d at 137) because it "imposes a stigma that broadly impacts a defendant's life and ability to participate in society" (People v Brown, 41 NY3d 279, 290 [2023]), "[t]he right not to have a misleading label attached to one's serious crime is not fundamental in [the constitutional] sense" (Knox, 12 NY3d at 67; see Brown, 41 NY3d at 285). As a result, defendant's "constitutional claims [are] subject to deferential rational basis review" (Brown, 41 NY3d at 285, citing Knox, 12 NY3d at 67; see People v Diaz, 150 AD3d 60, 62 [1st Dept 2017], affd on other grounds 32 NY3d 538 [2018]).
"The rational basis test is not a demanding one" (Knox, 12 NY3d at 69; see Myers v Schneiderman, 30 NY3d 1, 15 [2017], rearg denied 30 NY3d 1009 [2017]); "rather, it is 'the most relaxed and tolerant form of judicial scrutiny' " (Myers, 30 NY3d at 15, quoting Dallas v Stanglin, 490 US 19, 26 [1989]). That test "involves a 'strong presumption' that the challenged legislation is valid, and 'a party contending otherwise bears the heavy burden of showing that a statute is so unrelated to the achievement of any combination of legitimate purposes as to be irrational' " (id., quoting Knox, 12 NY3d at 69). Ultimately, "[a] challenged statute will survive rational basis review so long as it is 'rationally related to any conceivable legitimate State purpose' . . . [and] 'courts may even hypothesize the Legislature's motivation or possible legitimate purpose' " (id.). At its core, " '[t]he rational basis standard of review is a paradigm of judicial restraint' " (id. at 15-16; see Johnson, 36 NY3d at 202; People v Taylor, 42 AD3d 13, 16 [2d Dept 2007], lv dismissed 9 NY3d 887 [2007]).
Here, defendant relies on the undisputed fact that his out-of-state crime was nonviolent in nature; as noted, neither the Board nor the People requested that points be assessed under risk factor 1 for use of violence, and, again, the crime of which he was convicted would not be a sexually violent offense if committed in New York. Given that context, we conclude that defendant met his burden of establishing that the foreign registration clause of Correction Law § 168-a (3) (b) is unconstitutional as applied to him, inasmuch as mislabeling him as a sexually violent offender is not rationally related to any legitimate governmental interest. Although it is true, as the People contend, that the government has a legitimate interest in protecting vulnerable populations, and in some instances the public at large, from the potential harm posed by sex offenders (see People v Alemany, 13 NY3d 424, 430 [2009]; People v Mingo, 12 NY3d 563, 574 [2009]), that purpose is already served by requiring defendant to register in New York as a sex offender.
We conclude that designating defendant as sexually violent merely because he had an out-of-state sex conviction requiring out-of-state registration, regardless of whether that underlying offense is violent—as is currently required by the text of Correction Law § 168-a (3) (b)—bears no rational relationship to the legitimate governmental interest of informing the public of threats posed by sex offenders. Indeed, the animating notification purpose of SORA presupposes that the information available to the public as a consequence of a SORA registration is accurate. Where, as here, an offender is designated a sexually violent offender merely because of an out-of-state conviction requiring out-of-state registration, the public is not accurately informed of the true risk posed by the offender. We further conclude that the designation of defendant as a sexually violent offender—augmenting defendant's SORA registration period from a term of 20 years to his entire lifetime—merely because of the location of the registrable offense does not result in "a criminal designation that rationally fits [defendant's] conduct and public safety risk" (Brown, 41 NY3d at 290).
The People contend for the first time on appeal that the foreign registration clause of Correction Law § 168-a (3) (b) is rationally related to a legitimate governmental interest because prosecutors in New York may have difficulty obtaining complete records relating to out-of-state convictions. According to the People, the "reliance on third parties inherently means that some material information [necessary for designation purposes] may unintentionally be omitted" from consideration by the SORA court, and it would therefore be rational for the Legislature to designate as a sexually violent offender any individual who committed an out-of-state felony for which registration is required and then moved to New York.
As a preliminary matter, we note that it is highly unlikely that the Legislature had any such intent when it enacted subdivision (3) (b). As has been noted by the Court of Appeals, the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York concluded that the foreign registration clause was the result of a drafting error (see Talluto, 39 NY3d at 313). In any event, the Board in this case evidently had no trouble obtaining information relating to defendant's out-of-state conviction, as the record on appeal is replete with such records, including police reports. Nor is there any indication in the record that the Board has found it difficult or cumbersome to obtain out-of-state records in any other case.
As noted above, however, a reviewing court in a substantive due process analysis may rely on any conceivable legitimate governmental interest, real or imagined (see Myers, 30 NY3d at 15). Nevertheless, we cannot discern any conceivable legitimate governmental interest that is served by the application to defendant of a statutory provision that effectively deems his out-of-state felony to be sexually violent regardless of whether it actually involved the use or threatened use of violence. Even assuming, arguendo, that the rationale raised by the People concerning the potential unavailability of out-of-state records constitutes a conceivable legitimate governmental interest, we conclude that applying the foreign registration clause of Correction Law § 168-a (3) (b) to defendant is "so unrelated to the achievement of [that goal] as to be irrational" (Knox, 12 NY3d at 69).
In the absence of any rational relationship between the application of the foreign registration clause to defendant and a conceivable legitimate governmental interest, we conclude that the clause is unconstitutional as applied to defendant, who was designated a sexually violent offender based on his conviction of an out-of-state felony that is undisputedly nonviolent in nature.
Here, the " 'few' individuals" framework of Knox and Brown is inapplicable to defendant's challenge to Correction Law § 168-a (3) (b) because there are no studies in the record showing that the vast majority of defendants convicted of registrable out-of-state felonies have engaged in sexually violent conduct. Thus, there is no reason to believe that only a few such offenders committed their qualifying out-of-state offenses in a nonviolent manner. While there was a rational basis for the Legislature to be overinclusive in defining "sex offenses" in Correction Law § 168-a (2) (a) (i), the People here established no rational basis for the Legislature's use of overinclusive terms in defining sexually violent offenses in the second disjunctive clause of section 168-a (3) (b), especially considering that almost all out-of-state felonies that require sex offender registration and involve the use of violence will qualify as sexually violent offenses in New York under the essential elements test set forth in the first disjunctive clause of that paragraph.
It is true, as the dissent points out, that defendant has the burden of proof on his as-applied due process challenge. In our view, however, defendant met that burden by establishing in his motion papers that his out-of-state felony conviction was for a nonviolent offense and that the foreign registration clause of Correction Law § 168-a (3) (b) is therefore unconstitutional as applied to him. Although defendant did not specifically dispute the victim's allegations of violence as set forth in police reports attached to the case summary, he had no reason to do so given that, as noted by defense counsel in the motion papers, neither the Board nor the People recommended that points be assessed against defendant for the use of violence. Moreover, the case summary made clear that defendant pleaded not guilty to the counts of the indictment alleging violent conduct and that he entered a plea of no contest to a lesser offense that does not include any elements of violence (see Kan Stat Ann former § 21-3518 [a] [3]).
Furthermore, we note that the People have never contended that defendant should be designated a sexually violent offender based on the allegations set forth in the case summary. The People relied instead on the mere fact that defendant was convicted of a felony in Kansas for which he was required to register as a sex offender in that state. In fact, during oral argument in another case this term involving the same attorneys and similar contentions (People v Naomi Cromwell), the People conceded, correctly in our view, that a sexually violent offender designation under Correction Law § 168-a (3) (b) must be based solely on the elements of the crime of conviction, and that a defendant's alleged conduct may be considered only in assessing points to determine the appropriate risk level. Thus, not only is the dissent relying on an argument never advanced by the People, it is relying on an argument expressly disavowed by the People. Although the victim here alleged to the police that defendant engaged in sexual conduct that was violent in nature, the counts of the indictment based on those allegations were dismissed upon defendant's plea to a lesser offense, and, consistent with the People's concession, we conclude that defendant should not be designated a sexually violent offender in New York based on the victim's unproven allegations alone.
We see no merit to defendant's remaining contentions. Briefly, a facial constitutional challenge under the Due Process Clause "must fail so long as there are circumstances under which the challenged provision could be constitutionally applied" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d 55, 61 [2023] [internal quotation marks omitted]). "In other words, the challenger must establish that no set of circumstances exists under which the [statute] would be valid" (id. [internal quotation marks omitted]; see United States v Stevens, 559 US 460, 472 [2010]). Here, we can conceive of cases where a defendant has been convicted of an out-of-state felony involving violent sexual conduct that requires registration as a sex offender in the other state but does not include all of the essential elements of a sexually violent offense enumerated in Correction Law § 168-a (3) (a) (i). That is to say, we do not believe that the sexually violent offenses identified in section 168-a (3) (a) (i) comprise the entire universe of sex crimes that could be deemed sexually violent in nature. Considered as to a theoretical offender convicted of such an offense, the lifetime registration requirement associated with the designation of sexually violent offender would bear a rational relationship to the governmental interest of protecting the public from potential harm by sex offenders, thereby defeating a facial challenge to the statute.
Finally, with respect to the Privileges and Immunities Clause (US Const, art IV, § 2), which was intended to "plac[e] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned" (McBurney v Young, 569 US 221, 226 [2013] [internal quotation marks omitted]), we conclude that, contrary to defendant's contention, Correction Law § 168-a (3) (b) does not discriminate unfairly on the basis of state citizenship; instead, it draws its distinctions based on the location of an offender's illegal conduct. For instance, in this case, New York is treating defendant in exactly the same way that it would be statutorily authorized to treat a New York resident who committed the same sex crime while visiting Kansas (see generally People v Hoyos-Sanchez, 147 AD3d 701, 701-702 [1st Dept 2017], lv denied 29 NY3d 912 [2017]; People v McGarghan, 83 AD3d 422, 423 [1st Dept 2011]; Spiteri v Russo, 2013 WL 4806960, *34-35, 2013 US Dist LEXIS 128379, *138-141 [ED NY, Sept. 7, 2013, 12-CV-2780 (MKB) (RLM)], affd sub nom. Spiteri v Camacho 622 Fed Appx 9 [2d Cir 2015]).
Lindley and Nowak, JJ., concur; Ogden, J., concurs in the result in the following memorandum: I concur in the result reached by the plurality, but I write separately because, in my view, the second disjunctive clause of Correction Law § 168-a (3) (b)—requiring a person under SORA's foreign registration requirements to be designated a sexually violent offender—is unconstitutional on its face.
To begin, I agree with the plurality that defendant's "constitutional claims [are] subject to deferential rational basis review" (People v Brown, 41 NY3d 279, 285 [2023], citing People v Knox, 12 NY3d 60, 67 [2009]). We are therefore required to review whether defendant has met his burden of showing that the foreign registration clause of Correction Law § 168-a (3) (b) "is 'so unrelated to the achievement of any combination of legitimate purposes' as to be irrational" (Knox, 12 NY3d at 69). In my view, defendant has met his burden.
"Given the impact of a sex offender designation, there should be no room for error in classification" (Brown, 41 NY3d at 294). As the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York has recognized, however, the foreign registration clause of subdivision (3) (b) " 'collapses the distinction between violent and nonviolent sex offenses, at least as it applies to out-of-state offenders who reside in New York' " (People v Talluto, 39 NY3d 306, 314 [2022], quoting Rep of Advisory Comm on Crim Law and Pro to Chief Admin Judge of Cts of St of NY at 17 [Jan. 2010], available at https://www.nycourts.gov/LegacyPDFS/IP/judiciaryslegislative/pdfs/2010-CriminalLaw & Procedure-ADV-Report.pdf [accessed May 23, 2024]). The clause thus stigmatizes and brands all nonviolent out-of-state offenders as violent. It unnecessarily increases the pool of those with the designation—and misapplies the term to those who do not have a violent history. It does nothing to further the legislative purpose of protecting the public from those who commit violent sex offenses, and it undermines the usefulness of the designation (see Brown, 41 NY3d at 290-291). In my view, there is no conceivable legitimate governmental interest supported by the foreign registration requirements, and I therefore disagree with the plurality's conclusion that defendant's facial challenge has no merit.
In particular, I disagree with the plurality's rationale that the foreign registration clause is facially constitutional as long as one can merely "conceive"—without any example—of a scenario with a theoretical offender who "has been convicted of an out-of-state felony involving violent sexual conduct that requires registration as a sex offender in the other state but does not include all of the essential elements of a sexually violent offense enumerated in Correction Law § 168-a (3) (a) (i)" (see generally Janklow v Planned Parenthood, Sioux Falls Clinic, 517 US 1174, 1175 [1996] [Stevens, J., respecting denial of cert]). This exercise in speculation is particularly inapposite here, given the likelihood that "the legislature may have meant for subdivision (3) (b)'s foreign registration clause to apply only to an offender who is required to register as a sexually violent offender in the jurisdiction in which the conviction occurred" (Talluto, 39 NY3d at 314). I therefore cannot agree with the conclusion that the foreign registration clause is rationally related to legitimate government interests (cf. Knox, 12 NY3d at 67).
On the basis of my conclusion that the second disjunctive clause of Correction Law § 168-a (3) (b) is facially unconstitutional, and because I agree with the plurality that defendant's conviction does not constitute a sexually violent offense under the essential elements test set out in the first disjunctive clause, I agree with the plurality to reverse the order insofar as appealed from and vacate defendant's designation as a sexually violent offender.
Whalen, P.J., and DelConte, J., dissent and vote to affirm in the following memorandum: We respectfully dissent. In our view, defendant failed to meet his heavy burden of proving beyond a reasonable doubt that the foreign registration clause in Correction Law § 168-a (3) (b), that is, the definition of a sexually violent offense as including a "conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred," is either facially unconstitutional or unconstitutional as applied to him (see People v Viviani, 36 NY3d 564, 576 [2021]; People v Foley, 94 NY2d 668, 677 [2000], cert denied 531 US 875 [2000]; People v Taylor, 42 AD3d 13, 16 [2d Dept 2007], lv dismissed 9 NY3d 887 [2007]). We would therefore affirm the order determining that defendant is a level one risk and designating him a sexually violent offender under the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.).
Defendant was convicted upon his plea of guilty in 2010 in Kansas of aggravated sexual battery (see Kan Stat Ann former § 21-3518 [a] [3]), which is a registerable "sexually violent crime" under the Kansas Offender Registration Act ([KORA] Kan Stat Ann § 22-4902 [c] [9]; see generally Kan Stat Ann § 22-4901 et seq.). Although the issue was not addressed by either party in the proceeding before the SORA court, the People conceded at oral argument on appeal that the Kansas crime does not constitute a sexually violent offense under SORA's essential elements test, i.e., that the conduct of which defendant was convicted under the Kansas statute, if committed in New York, would not have amounted to a sexually violent offense under New York law (see Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 753 [2007]).
At the outset, we agree with our colleagues that defendant has a "constitutionally-protected liberty interest, applicable in a substantive due process context, in not being required to register under an incorrect label" (People v Knox, 12 NY3d 60, 66 [2009], cert denied 558 US 1011 [2009]) and that rational basis review is appropriate for defendant's substantive due process challenge to his alleged misdesignation as a sexually violent offender (see People v Brown, 41 NY3d 279, 285 [2023]; Knox, 12 NY3d at 67). Next, where, as here, a defendant presents both a facial and an as-applied challenge, our first task is to decide whether the challenged statute is unconstitutional as applied to the defendant (see generally People v Stuart, 100 NY2d 412, 422 [2003]). "As the term implies, an as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case" (id. at 421 [emphasis added]).
To that end, we note that, under relevant Court of Appeals precedent, a statute requiring a defendant to register as a sex offender based on a conviction for a specified offense is not constitutionally invalid simply because that statute may encompass defendants whose criminal conduct was not sexual in nature "as that term is commonly understood" (Knox, 12 NY3d at 65; see Brown, 41 NY3d at 289). Indeed, the Court acknowledged in People v Brown that "the Legislature may cast a wide net by 'employ[ing] overinclusive terms' to include within SORA's reach those who commit a non-sexual crime but nonetheless present a future risk of sexual harm" (Brown, 41 NY3d at 289; see Knox, 12 NY3d at 69). Nonetheless, the Brown Court specifically recognized the existence of a judicial remedy for constitutional harm caused by the application of an overbroad SORA designation statute where there is an affirmative showing in the record that the defendant "is one of the 'few' individuals . . . [encompassed within the statutory definition of 'sex offender'] for whom the sex offender designation 'is unmerited' " (Brown, 41 NY3d at 289, quoting Knox, 12 NY3d at 69). Such a showing was evidenced in Brown by the SORA court's finding of fact that the defendant's "sole motivation [in committing the predicate offense] was to steal money and that the offense [of unlawful imprisonment in the first degree] involved 'no sexual contact or motivation' whatsoever" (Brown, 41 NY3d at 283).
We see no reason to depart from the logic of Brown in the present case, where the foreign registration clause of Correction Law § 168-a (3) (b) broadly permits the People to establish, as they did, that defendant's designation as a sexually violent offender is warranted solely based on his Kansas conviction of an offense that required his registration as a sex offender in that jurisdiction (see People v Talluto, 39 NY3d 306, 310 [2022]). The People had no further burden, inasmuch as, once the fact of the requisite foreign conviction is established, "the decision whether to designate a defendant a sexually violent offender is not a matter with respect to which the adjudicating court may exercise discretion" (id. at 315). Instead, to establish the merits of his as-applied challenge, the onus is on defendant to establish that, although he is encompassed within the statutory definition of "sexually violent offender," he is an "individual[ ] . . . for whom the [sexually violent] offender designation is unmerited" because the foreign conviction involved no acts of sexual violence "and his conduct provides no basis to predict risk of future sexual[ly violent] harm" (Brown, 41 NY3d at 289, 290 [internal quotation marks omitted]).
Contrary to the conclusion of our colleagues, defendant did not meet that burden. Instead, defendant, without distinguishing between a facial and an as-applied constitutional challenge, argued generally that "[t]here is no logical rationale in defining all registerable out-of-state sex offenses as 'violent,' " an argument repeated on appeal without further explication. Defendant's failure to make a factual argument that his foreign conviction involved no conduct defined as sexually violent under New York law or that his "conduct provides no basis to predict risk of future sexual[ly violent] harm" alone warrants rejection of his as-applied challenge (Brown, 41 NY3d at 290; see generally Stuart, 100 NY2d at 421).
The plurality nonetheless supplies defendant with a factual argument that defendant's conviction is "nonviolent" by construing the recommendation of the Board of Examiners of Sex Offenders to assess zero points against defendant under risk factor 1, and presumably the court's adoption of that recommendation, as evidence of defendant's lack of sexually violent conduct or future risk thereof (see Brown, 41 NY3d at 290). We respectfully note that the plurality offers no rationale to support its narrow focus on that single factor, even though a SORA determination must be based on the court's review of all relevant factors, including the Board's recommendation and any additional evidence or arguments regarding a defendant's future risk of sexual offense presented by the parties (see Correction Law § 168-k [2]; Brown, 41 NY3d at 290; [*3]see generally People v Perez, 35 NY3d 85, 93-94 [2020]). Risk factor 1, entitled "Use of Violence," is limited to the assessment of points for the use of forcible compulsion, infliction of physical injury, or presence of a dangerous instrument in the underlying crime. Here, however, the SORA court also adopted the Board's recommendation to assess points under both risk factor 2 (sexual intercourse, deviate sexual intercourse, or aggravated sexual abuse) and risk factor 6 (the victim suffered from mental disability or incapacity or from physical helplessness) because defendant's conviction stemmed from his conduct in "having sexual intercourse . . . with the physically helpless victim." Specifically, the case summary reflects that the victim, who had consumed alcohol to the point of unconsciousness, woke up and realized that she was restrained in her bed and that a man identified as defendant was engaging in anal sex with her. Such conduct by a defendant is sufficient to constitute, inter alia, criminal sexual act in the first degree under New York law (see Penal Law §§ 130.00 [7]; 130.50 [2]; People v Dunham, 172 AD3d 1462, 1463-1464 [3d Dept 2019], lv denied 33 NY3d 1068 [2019]), which the Legislature has designated as sexually violent conduct even in the absence of any forcible compulsion, resulting physical injury, or use of a weapon (see Penal Law § 70.02 [1] [a]; Correction Law § 168-a [3] [a] [i]). Defendant did not contest those factual allegations or the related risk factors, and, contrary to the conclusion of the plurality, defendant was required to do so in order to establish that his designation as a sexually violent offender would, in fact, be incorrect. Inasmuch as defendant failed to do so, the People had no obligation to raise a contrary argument and the evidence of defendant's sexually violent conduct was properly before the SORA court (see People v Bethune, 108 AD3d 1231, 1231-1232 [4th Dept 2013], lv denied 22 NY3d 853 [2013]; cf. People v Maund, 181 AD3d 1331, 1331-1332 [4th Dept 2020]; see generally People v Diaz, 34 NY3d 1179, 1181 [2020]). Thus, even if we agreed that defendant had availed himself of a plea agreement to a Kansas offense that, considered in the abstract, would not constitute a sexually violent offense under New York law, there is still a rational justification for defendant's designation as a sexually violent offender "under the facts of th[is] case" (Stuart, 100 NY2d at 421; cf. Brown, 41 NY3d at 284).
The plurality, however, concludes that "a sexually violent offender designation under Correction Law § 168-a (3) (b) must be based solely on the elements of the crime of conviction, and that a defendant's alleged conduct may be considered only in assessing points to determine the appropriate risk level." First, that conclusion appears to contradict the plurality's initial reliance on the absence of an assessment of points against defendant under risk factor 1 for the use of certain types of physical violence. Next, by limiting the analysis to the elements of the foreign conviction, the plurality appears to conclude that a defendant may not be constitutionally designated a sexually violent offender unless the foreign conviction satisfies the "essential elements" test found in the first clause of section 168-a (3) (b)—i.e., the offense "includes all of the essential elements" of an enumerated "sexually violent offense" under New York law (§ 168-a [3] [b]). Notably, the statutory interpretation argument that the foreign registration clause should be read out of the statute has already been rejected by the Court of Appeals (see Talluto, 39 NY3d at 315). The plurality's conclusion also appears to conflict with its subsequent statement that defendant's facial challenge must fail because the plurality can "conceive of cases where a defendant has been convicted of an out-of-state felony involving violent sexual conduct that requires registration as a sex offender in the other state but does not include all of the essential elements of a sexually violent offense enumerated in Correction Law § 168-a (3) (a) (i)." That hypothetical appears to be premised on defendant's underlying conduct, despite the simultaneous assertion that such conduct "may be considered only in assessing points to determine the appropriate risk level."
Further, even if we were to agree with the plurality that the sexually violent offender designation is constitutionally permissible only where the defendant's foreign conviction "includes all of the essential elements" of an enumerated "sexually violent offense" under New York law (§ 168-a [2] [d] [i]; [3] [b]), we would still affirm. The plurality relies on the People's concession that the Kansas crime of conviction does not constitute a sexually violent offense under SORA's essential elements test. Defendant made no such argument in support of his constitutional challenges and, we are compelled to reiterate, he had the initial burden of establishing the merits thereof. In any event, this concession does not "relieve us from the performance of our judicial function and does not require us to adopt the proposal urged upon us" (People v Berrios, 28 NY2d 361, 366-367 [1971]; see People v Nathan, 222 AD3d 1416, 1417 [4th Dept 2023]).
Here, the elements of the Kansas offense of aggravated sexual battery include "the intentional touching of the person of another who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another . . . when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by, or was reasonably apparent to, the offender" (Kan Stat Ann former § 21-3518 [a] [3]). The analogous offense in New York appears to be sexual abuse in the first degree. Under New York law, "[a] person is guilty of sexual abuse in the first degree when [that person] subjects another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]).
" 'Sexual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (§ 130.00 [3]), and in New York law physical helplessness includes alcohol-induced unconsciousness (see § 130.00 [7]; Dunham, 172 AD3d at 1463-1464). Comparing these overlapping statutes, and mindful that a "strict equivalency standard" is not required in SORA cases (Perez, 35 NY3d at 93), we note that the Kansas "statute's victim age threshold [i.e., 16 or older] is narrower than that in the New York statute [i.e., no victim age threshold] and is thus inclusive of the New York age threshold" (id. at 96). At the same time, the Kansas statute is arguably broader than the New York statute (see id. at 96-97), inasmuch as the sexual contact is not expressly limited to "sexual or other intimate parts of a person" (§ 130.00 [3]), and therefore we "must review the conduct underlying the foreign conviction to determine if that conduct is, in fact, within the scope of the New York offense" (North, 8 NY3d at 753). Here, defendant's conduct meets the elements of the New York crime of sexual abuse in the first degree. Sexual abuse in the first degree is a sexually violent offense under New York law (see Correction Law § 168-a [3] [a] [i]). Thus, the conduct of which defendant was convicted under the Kansas statute, if committed in New York, would have amounted to a sexually violent offense under New York law (see North, 8 NY3d at 753), regardless of whether we begin our analysis with the essential elements test or the unchallenged conduct described in the case summary.
In sum, defendant failed to establish that he was not a sexually violent offender under New York law and, as such, there can be no violation of his "constitutionally-protected liberty interest, applicable in a substantive due process context, in not being required to register under an incorrect [designation]" (Knox, 12 NY3d at 66 [emphasis added]). In light of our conclusion that defendant's as-applied challenge to the foreign registration clause in Correction Law § 168-a (3) (b) lacks merit, "the facial validity of the statute is confirmed" (Stuart, 100 NY2d at 422). Inasmuch as we agree with our colleagues that defendant's remaining constitutional challenge based on the Privileges and Immunities Clause lacks merit, we would affirm.
Entered: June 14, 2024
Ann Dillon Flynn
Clerk of the Court